Eileen S. MALONEY, Respondent,

v.

Gregory KETTER, Appellant.

No. C6–87–141.

Court of Appeals of Minnesota.

June 30, 1987.

Review Denied Sept. 18, 1987.

William J. Mavity, Mavity & Ryan, Minneapolis, for respondent.

Robert F. Ihinger, Jr., Richfield, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK, and LESLIE, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a trial court order denying appellant's motion for amended findings and, in the alternative, a new trial. Appellant claims the trial court abused its discretion under Minn.R.Civ.P. 59.01 because (1) the verdict regarding valuation of the partnership is not justified by the evidence, (2) the verdict was contrary to law regarding misrepresentation and failure to credit appellant interest on his contribution of inventory and cash, (3) errors of law occurred regarding admission of evidence, (4) damages awarded respondent were excessive, and (5) irregularities consisting of ex parte communications, time spent off the record and improper consideration of deposition testimony occurred at trial. We affirm in part and remand.

## FACTS

In June 1982, appellant Gregory J. Ketter and respondent Eileen S. Maloney formed a partnership and began conducting business as the DreamHaven Gallery. The parties operated a store in the Hennepin-Lake area of Minneapolis where they sold books and art. Appellant had previously been a partner in two other bookstores. Respondent had once managed a store and her family had been involved with an art gallery.

The partnership agreement between the parties was oral. Each was to share equally in the business' profits and losses, have equal roles in managing the bookstore, and equal access to the firm's financial books and records. Appellant contributed $3000–$5000 in inventory and $1000 in cash at the formation of the partnership. The parties agreed appellant would be repaid that amount before profits would be divided.

The parties' roles differed in the operation of the business. Respondent managed the store. She waited on customers, made sales, displayed advertising and kept the store. Appellant concentrated on the sale of books at regional conventions. Much of his previous experience had been in this area.

Appellant operated the firm's checking account and only he was an authorized signatory. The account was maintained as part of his personal checking account at the St. Paul City and County Employees Credit Union. Monthly statements were mailed to appellant's permanent address at his parent's house. In February 1984, a business account was opened at the Riverside Community Bank and both parties were made authorized signatories.

By the end of 1982, the parties realized their store's location was not ideally suited for its trade. Therefore, in December 1982, the DreamHaven Gallery moved to Dinkytown. Appellant testified at that time he contributed to the partnership an additional $4000–$5000 in books.

In mid–1983, respondent became curious as to the financial status of the business. Although sales had increased, appellant informed her the store was still losing money. Respondent's concerns continued throughout 1983. She requested appellant to teach her the business' bookkeeping, but nothing was done.

In January 1984, respondent again asked appellant about the store's profitability after she became aware he had recently purchased a new truck. Appellant had actually bought the vehicle in July 1983. The $1000 downpayment was loaned to appellant by his father and appellant used partnership funds to finance subsequent truck payments. Respondent pressed appellant regarding the firm's accounting. Appellant then agreed to open the business checking account. In April 1984, the parties discussed reducing the partnership agreement to writing. No contract was ever signed.

In early May 1984, respondent and Terry Bartlett, who worked at the store, made an inventory of the store's merchandise. They recorded retail price and calculated the value as $50,649.78. Certain merchandise was not included because ownership by the partnership was questioned. Appellant became angry when given the inventory.

Thereafter, respondent decided to withdraw from the partnership. In June 1984, she sued appellant seeking a formal partnership dissolution and accounting, damages for appellant's breach of the partnership agreement by concealing profits, damages for breach of an oral contract between the parties by not maintaining adequate records, quantum meruit, and compensatory and punitive damages for misrepresentation.

Prior to trial, appellant moved for partial summary judgment regarding respondent's quantum meruit and misrepresentation claims. The motion was taken under advisement. At trial, respondent withdrew her quantum meruit claim. At the close of respondent's case, appellant moved to dismiss respondent's misrepresentation claim because it had not been supported by the evidence. The trial court denied the motion.

Following a three-day trial, the trial court issued its findings of fact, conclusions of law and order for judgment on November 19, 1986. The court concluded appellant's "repeated failure to provide an account of the partnership business led to its dissolution on May 18, 1984." Respondent was awarded $21,420.50 as her 50% share of the partnership's assets after appellant's initial contribution and the firm's profits. The trial court also awarded her $2000 in punitive damages for misrepresentation, but was silent regarding compensatory damages.

Appellant moved for amended findings or, in the alternative, a new trial. The trial court denied appellant's motions by order filed December 19, 1986. Appeal is made from that order.

### ISSUE

Did the trial court properly deny a new trial and amended findings?

## ANALYSIS

1. Denial of a new trial based on grounds other than error of law is within the broad discretion of the trial court. *See* Minn.R.Civ.P. 59.01. When appealing denial of a new trial motion, "any finding of fact may be challenged as not sustained by the evidence." *Graphic Arts Educational Foundation v. State*, 240 Minn. 143, 144, 59 N.W.2d 841, 843 (1953) (footnote omitted). Such findings will be sustained unless clearly erroneous. *Serbus v. Serbus*, 324 N.W.2d 381, 385 (Minn.1982); Minn.R. Civ.P. 52.01.

2. Appellant claims the trial court's findings regarding his capital contribution to the partnership, calculation of the business' profit, determination of the business' debt, use of appellant's truck, and itemization and valuation of the store's fixtures are not supported by the record. *See* Minn. R.Civ.P. 59.01(7).

The trial court may grant a new trial if the verdict is not justified by the evidence. Minn.R.Civ.P. 59.01(7). Findings of fact by a court will not be reversed unless clearly erroneous in that they are manifestly contrary to the evidence. The appeal court must view the findings in the light most favorable to the prevailing party. Granting a new trial rests in the discretion of the court; the decision will be reversed only for a clear abuse of that discretion.

*Beckman v. Universal Enterprises, Inc.*, 367 N.W.2d 577, 579 (Minn.Ct.App.1985) (citations omitted).

### a. *Contribution.*

The trial court found appellant made a contribution at the time of the partnership's formation of $4000 in inventory and $1000 in cash. Appellant claims the trial court incorrectly failed to make a finding of fact regarding his subsequent contribution of inventory in December 1982.

Appellant testified he contributed books he had acquired between 1980–82 prior to the partnership formation. He stated the parties agreed the books were valued between $4000–$5000, but that he would accept the $4000 valuation. Respondent testified no agreement existed regarding post-formation contribution.

Respondent claims any additional claim of contribution was offset by appellant's use of partnership funds for personal debt service and installment payments on his truck.

The allegation that a specific amount was contributed does not make that amount liquidated. Partners must share in losses, and a loss in the enterprise might well render the amount due a partner less than the amount contributed. *Wallner v. Schmitz*, 239 Minn. 93, 96, 57 N.W.2d 821, 823 (1953); *see* Minn.Stat. § 323.17(1) (1986).

■ Because of the trial court's silence, we remand for further finding of fact regarding appellant's post-formation contributions to the partnership and any necessary correction concerning calculation of respondent's share of assets and profits.

### b. *Profits.*

The trial court found the partnership's profit was difficult to calculate because inadequate records were kept, but determined profits were $16,500. The trial court reasoned:

On [his] 1983 partnership federal income tax return, [appellant] reported gross receipts of only $50,403, despite the fact that his checking account showed $64,346 in deposits for that year and that he testified that he had no income from any other source. This tax return was filed after the initiation of this lawsuit. The same tax return showed total business expenses of $54,804, for a difference between business expenditures and gross receipts of $9,542. This is the best, although somewhat conservative, evidence the court has as to the profits made by the business during the year 1983. From this evidence the court infers that similar profits were made in the closing months of the partnership in 1984, and that

somewhat similar, but lower profits were made during the first months of the partnership in 1984.

Appellant alleges four errors in the trial court's finding. First, he claims 1983 and 1984 profits must be offset by a 1982 $5000 loss to determine the partnership's overall profit.

■ Second, appellant claims the trial court should have used the partnership checking record to calculate profits. Instead, the court used appellant's income tax returns that he stated at trial were inaccurate. Respondent asserts the returns were not prepared until after litigation was commenced and appellant at deposition testified the returns were accurate. We defer to the trial court's ability to judge appellant's credibility. We agree with respondent it is fair to assume a substantial amount of cash from the regional conventions was never deposited in the partnership checking account and therefore appellant's method of calculation is flawed.

Third, appellant asserts the trial court did not apply its method of calculation correctly. He argues $3700 in nonpartnership funds which ran through the checking account and were counted as gross receipts must be weeded out.

Finally, appellant attacks the trial court's estimated 1984 profit. He alleges the court improperly relied on testimony that concerned income from book conventions which occurred after the dissolution. Appellant argues that while the trial court stated the partnership earned 1984 profits somewhat similar to those earned in 1983, the court's calculation reveals profit earning in 1984 at nearly twice the 1983 rate. Although the trial court did not specifically calculate its inference of 1984 profit, appellant's broad arguments do not reveal an erroneous calculation. Neither do his other arguments justify an amended finding regarding profit.

c. *Debt.*

In assessing the partnership's debt, the trial court found:

That [appellant] variously testified that at the time of dissolution, the partnership had liabilities of $7,700 or $7,834.10. However, on cross-examination, [respondent] elicited testimony from [appellant] showing that such debt consisted mainly of (1) items that were undocumented, (2) items which were purchased after the dissolution of the partnership, and (3) personal loans and debt of the [appellant]. At best, after the undocumented items and the post-partnership items are excluded and the [appellant's] personal debt and prior personal truck expenditures of $1,892.46 are deducted, there remains no debt for which [appellant] is entitled to a credit.

Appellant claims a $7700 partnership debt existed at dissolution. He asserts the three categories noted by the court as offsetting the complete debt actually total only 19% of the $7700 debt. Appellant insists only three undocumented items exist totaling $539.71, a single debt of $163.32 was incurred after the dissolution, and his outstanding personal loan from the City and County Employee's Credit Union equaled only $750.

■ Appellant argues the trial court improperly offset previously made payments on the personal loan because that liability was reasonably incurred in the ordinary and proper conduct of the business. *See* Minn.Stat. § 323.17(2). Respondent asserts the loan was for personal expenses. The loan was deposited in appellant's checking account. Appellant could not specifically state what use was made of the loan other than it was not for personal expenses. It was not erroneous to exclude appellant's loan from partnership debt.

Appellant argues that even if he concedes the personal loan payments of $2172.22 made and truck expenses of $1792.46, an outstanding debt balance of $2445.61 still exists.

Appellant determined his debt calculation by use of his checkbook and invoices to determine checks written after the dissolu-

tion for monies owing prior to dissolution. As respondent notes, appellant's calculation was flawed because some bills were paid prior to dissolution and other bills were not due yet. But respondent's calculations have some overlap.

We remand for a precise mathematical finding regarding calculation of the partnership debt. The trial court should specifically subtract those expenditures it excludes from the debt determined by appellant.

### d. *Use of appellant's truck.*

The trial court found appellant's truck was a personal expense and appellant agrees. He claims, however, the trial court improperly failed to credit him for business use of the truck for travelling to regional conventions and picking up supplies. Appellant claims a net contribution of $2932.54, but concedes he is willing to accept a $2000 credit. The trial court did not make a specific finding regarding this claim.

■ Although the trial court was silent, it could not have credited appellant for use of the truck because appellant did not keep a log of his driving. He offered a summary of his driving written after the dissolution, but that summary was properly excluded. Based on the evidence admitted, appellant is not entitled to credit for any business use of his truck.

### e. *Store fixtures.*

Regarding valuation of store fixtures, the trial court found:

> The store fixtures and equipment at the time of the dissolution of the partnership included the following: four large merchandise display racks, three large book shelving units, one lighted glass display case, three filing cabinets, three tables, shrink-wrapping equipment, tables and chairs. Witness Terry Bartlett testified that the store fixtures were worth between $2,000 and $3,000. The court determines their value to be $2,500.

Appellant attacks that finding as totally erroneous. He asserts the three filing cabinets, three tables, shrink-wrapping equipment and tables and chairs were not testified to at trial but appear only in respondent's post-trial memorandum. Appellant complains no testimony was made regarding ownership of the fixtures. Respondent stated she took fixtures including a clock and stereo that belonged to her. But appellant never claimed ownership of any of the fixtures and it is logical to assume the remainder were owned by the partnership.

■ The court apparently based its valuation on Bartlett's testimony. Appellant correctly points out Bartlett's estimates of value did not concern the store fixtures, but instead referred to books in the store which were not included in the May 1984 inventory because their ownership was in question. The basis of the court's evaluation is erroneous. We remand for proper valuation of the store fixtures.

Appellant alludes to ten additional findings addressed in his post-trial memorandum that are in error. We have reviewed those findings and conclude any error resulting was harmless. *See* Minn.R.Civ.P. 61.

3. Appellant claims the trial court improperly applied the law regarding interest payable on a capital contribution and respondent's allegation of misrepresentation. *See* Minn.R.Civ.P. 59.01(7).

### a. *Interest.*

The partnership act provides:

> A partner, who in aid of the partnership makes any payment or advance beyond the amount of capital which the partner agreed to contribute, shall be paid interest from the date of the payment or advance;

> A partner shall receive interest on the capital contributed only from the date when repayment should be made.

Minn.Stat. § 323.17(3), (4) (1986). Because no agreement was reached regarding sub-

sequent contributions, he asserts the statute applies. Appellant claims he is entitled to interest from December 1, 1982 on his $4000 contribution of inventory when the partnership moved to its Dinkytown location. Claiming contribution of the $2000 use of his truck, appellant seeks interest from the date of dissolution. He wants interest since the date of dissolution on advancement of the credit union loan. Finally, he seeks interest on his initial $5000 contribution from the date of dissolution. The trial court made no finding regarding interest.

■ We remand for determination of any interest owing on appellant's initial $5000 contribution and, in conjunction with remanding for finding of fact regarding appellant's December 1982 contribution, calculation of any interest. Regarding appellant's truck and loan, interest cannot be awarded when no contribution has been shown.

### b. *Misrepresentation.*

Regarding misrepresentation, appellant claims respondent's pleadings were defective because she claimed only that appellant misrepresented his intention to form an equal partnership, not that he concealed profits. But respondent's complaint also states appellant misrepresented his intent to share profits and is consistent with the evidence produced.

The time-worn and oft-repeated elements of misrepresentation are:

1. There must be a representation;

2. That representation must be false;

3. It must have to do with a past or present fact;

4. That fact must be material;

5. It must be susceptible of knowledge;

6. The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;

7. The representer must intend to have the other person induced to act, or justified in acting upon it;

8. That person must be so induced to act or so justified in acting;

9. That person's action must be in reliance upon the representation;

10. That person must suffer damage;

11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Davis v. Re-Trac Manufacturing Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967). Appellant concedes only two of these elements: a representation and that representation concerned a past or present fact.

The trial court found:

In response to [respondent's] repeated questioning, the [appellant] on several occasions told her that the business was losing money when in fact it was not, a fact which was susceptible of knowledge by the [appellant] who was in control of the financial records. The [appellant] knew the falsity of his statements. In so doing, he induced [respondent] to continue working at the Dreamhaven store for no compensation beyond her minimal per diem compensation. [Respondent] was justified in so acting, at least until such time as she discovered that [appellant] had purchased the new Nissan pick-up truck without informing her with the use of what undoubtedly were partnership profits. That [appellant's] misrepresentation also denied [respondent] the use of her share of partnership profits at the time they were generated.

■ After reviewing the record, we conclude the evidence supports the trial court's finding and each of the elements of misrepresentation. While the court did find respondent suffered the loss of her share of profits at the time it was generated, the trial court was silent regarding an award of compensatory damages. In this case, punitive damages cannot be awarded absent compensatory damages. *See* Haugen & Tarkow, *Punitive Damages in Minnesota: The Common Law and Developments*

*Under Section 549.20 of the Minnesota Statutes,* 11 Wm. Mitchell L.Rev. 353, 378 (1985). We therefore remand for a specific finding regarding compensatory damages. We deny appellant's request for damages pursuant to Minn.Stat. § 549.21 (1986) for defending the misrepresentation claim.

4. Appellant claims the trial court erred by admitting certain evidence and excluding other evidence. *See* Minn.R.Civ.P. 59.-01(6).

> Appellants claim that they were prejudiced by four evidentiary rulings. We first note that evidentiary rulings on materiality, foundation, remoteness, relevancy, or the cumulative nature of the evidence are committed to the sound discretion of the trial judge and will only be the basis for reversal where that discretion has been clearly abused.

*Jenson v. Touche Ross & Co.,* 335 N.W.2d 720, 725 (Minn.1983).

First, appellant claims numerous exhibits and testimony relating to the financial circumstances of the business after the dissolution of the partnership were improperly admitted because they were irrelevant to respondent's misrepresentation claim, proof that partnership inventory was sold at a profit, and impeachment of appellant.

■ Second, appellant insists the partnership's daily sales ledger should have been admitted. The trial court sustained respondent's objection that she had not been provided with the ledger at the pre-trial conference. *See* Minn.Civ.Trialbook R. 37 (pre-trial exchange of lists of exhibits). Because appellant sheltered profits from the partnership's financial records, the probative value of the ledger is doubtful.

Third, appellant argues he was improperly precluded from inquiring about respondent's credibility. The trial court told appellant it conceded "the fact that maybe [respondent] didn't show up at work, maybe she closed, maybe she was tardy, maybe she was a poor businessperson." The trial court was already in a unique position to judge respondent's credibility.

Fourth, appellant complains he should have been permitted to inquire of respondent regarding her educational background to assess her capacity for knowledge to evaluate her claims during testimony that she did not know certain information.

> [B]efore an error in the exclusion of evidence may be grounds for a new trial, it must appear that such evidence might reasonably have changed the result of the trial if it had been admitted.

*Jenson,* 335 N.W.2d at 725 (quoting *Poppenhagen v. Sornsin Construction Co.,* 300 Minn. 73, 79–80, 220 N.W.2d 281, 286 (1974)). Any error regarding these evidentiary rulings was harmless. *See* Minn.R. Civ.P. 61.

■ 5. Appellant claims the trial court failed to keep itself within the bounds of reason and common sense in awarding damages. *See* Minn.R.Civ.P. 59.01(5). Here appellant has not demonstrated the passion or prejudice he insists exists in the trial court's comments, rulings and findings. *See Advanced Training Systems, Inc. v. Caswell Equipment Co.,* 352 N.W.2d 1, 11 (Minn.1984).

6. Appellant claims he was denied a new trial because of three irregularities in the trial court's handling of the proceedings. *See* Minn.R.Civ.P. 59.01(1).

> A motion for a new trial may be granted when any irregularity deprived the moving party of a fair trial. Minn.R. Civ.P. 59.01(1) (1985). A motion for a new trial, however, should be granted " 'cautiously and sparingly and only in the furtherance of substantial justice.' " Furthermore, the trial court has broad discretion in deciding whether a new trial is required. The trial court's decision to grant or deny a motion for a new trial will not be reversed unless there was a clear abuse of discretion.

*Helwig v. Olson,* 376 N.W.2d 763, 765 (Minn.Ct.App.1985) (citations omitted).

Appellant first complains that the trial court improperly read and considered deposition testimony of the parties because the depositions were not admitted into evidence.

Second, appellant claims too much time was spent off the record. He asserts while arguments in chambers are not evidence, it is not clear whether the trial court considered them as such.

■ Third, appellant insists he was denied a fair trial because of ex parte communication between the trial court and respondent. Appellant admits he cannot state how many times this occurred. Still, he alleges "indications are that counsel and court were huddling together to analyze Respondent's strategy for the next day of trial." Respondent denies any ex parte communication. We agree with respondent that appellant's argument regarding irregularities is without merit.

## DECISION

The trial court properly denied appellant a new trial. We remand, however, for further and specific findings regarding appellant's contributions to the partnership and interest to be awarded on those contributions, calculation of the partnership's debt, valuation of the partnership's store fixtures, compensatory damages for appellant's misrepresentation, and any necessary recalculation of respondent's share of the partnership's assets and profits at dissolution. Appellant's request for Minn.Stat. § 549.21 damages is denied.

Affirmed in part and remanded.