**In re the Marriage of Mamie Marie VANGSNESS, petitioner, Appellant,**

**v.**

**Michael Alan VANGSNESS, Respondent.**

**No. C0–99–1551.**

Court of Appeals of Minnesota.

March 21, 2000.

Brenda Velde, Alexandria, for appellant.

Belvin Doebbert, Glenwood, for respondent.

Considered and decided by
TOUSSAINT, Chief Judge, CRIPPEN,
Judge, and FOLEY,* Judge.

## OPINION

CRIPPEN, Judge.

Appellant Mamie Vangsness and respondent Michael Vangsness married and had three children. The 1998 judgment dissolving their marriage reserved issues, including custody. The order placing temporary custody of the children with appellant forbade the parties from criticizing

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

each other or trying to influence the children's custodial preference. In May 1999, following a trial, the district court placed physical custody of the children with respondent. Appellant's post-trial motion alleged that she was entitled to a new trial because the evidence did not support the custody placement and because respondent committed misconduct by criticizing her to the children, influencing their custodial preference, and rehearsing the children's testimony. Appellant also sought a new trial based on her allegations that she had newly discovered evidence of respondent's alleged wrongdoing. She appeals the trial court decision denying most of her requests. Alternatively, she seeks an outright reversal of the trial court's placement of custody with respondent. Because the trial court's findings are not clearly erroneous and address the relevant best-interests concerns, and because no other abuse of the trial court's broad discretion is demonstrated, we affirm.

## FACTS

The parties were married in 1985 and have three children. In May 1996, appellant moved out of the family home. Shortly thereafter, appellant's boyfriend moved in with her and the children. In August 1996, the parties had a dispute in which respondent allegedly threatened appellant. The parties dispute the details of the incident.

In January 1997, respondent was laid off, appellant went back to school, and the parties agreed the children should live with respondent. In June 1997, the parties, the children, and the police were involved in another incident. The parties dispute the details, but as a result, the youngest child moved back in with appellant. In January 1998, the older two children moved back in with appellant. In March 1998, respondent moved in with his girlfriend.

Appellant petitioned to dissolve the marriage in May 1998, seeking physical custody of the children. Respondent also sought physical custody. The trial court dissolved the parties' marriage in August 1998 and reserved all other issues. A month later, the court placed temporary custody of the children with appellant and ordered a custody study. Also, respondent married his girlfriend. The custody study, completed in November, states that all three children told the evaluator that they wanted to live with respondent and recommends that placement of sole physical custody of the children be with him.

The custody trial started in February 1999 and ended in March 1999. During trial, the court conducted in-camera interviews of each of the children, then ages 12, 11, and 6; the older children said they wanted to live with respondent.

Appellant's post-trial motion, following the placement of custody in May 1999, was accompanied by an affidavit by the parties' oldest child. After a hearing, the trial court made only non-substantive alterations to the May order.

## ISSUES

1. Did the trial court abuse its discretion by not granting appellant a new trial because the evidence does not support the trial court's findings of fact?

2. Aside from examining the sufficiency of evidence for the trial court's findings of fact, which adequately address statutory best-interests considerations, has appellant demonstrated an error of the trial court in its determination of the best interests of the children?

3. Did the trial court abuse its discretion by not granting appellant a new trial for newly discovered evidence?

## ANALYSIS

1. Findings on best-interests factors

■ On appeal from the denial of a motion for a new trial, only the matters raised in the motion can be reviewed. *Estate of Spiess v. Schumm*, 442 N.W.2d 179, 181 (Minn.App.1989); *Iverson v. Iverson,*

432 N.W.2d 492 (Minn.App.1988), *review denied* (Minn. July 27, 1989). Here, appellant's post-trial motion asserts that the trial court's findings of fact, including its ultimate finding on the children's best interests and its underlying findings on best-interests factors, are not supported by the record. *See* Minn. R. Civ. P. 59.01(g) (allowing new trial when decision is not supported by evidence). On the underlying findings, appellant asserts two categories of trial court error: (a) discounting evidence that respondent wrongfully engaged in influencing the custodial preferences of the children, compounded by the court's choice to give weight to these preferences, and (b) disregard of evidence bearing on the best-interests factors the trial court found to be neutral as between the parties. Appellant also asserts that respondent's influence of the children rose to a level of misconduct, constituting an alternative entitlement of appellant for a new trial. *See* Minn. R. Civ. P. 59.01(b) (allowing new trial for misconduct of prevailing party).

■ Generally, we must defer to the trial court's broad discretion in deciding whether to grant a new trial. *See Maloney v. Ketter*, 408 N.W.2d 865, 868 (Minn. App.1987) (stating "[d]enial of a new trial based on grounds other than error of law is within the broad discretion of the trial court"), *review denied* (Minn. Sept. 18, 1987); *see also Grorud v. Thomasson*, 287 Minn. 531, 534, 177 N.W.2d 51, 53 (1970) (sufficiency of evidence); *Reese v. Ross & Ross Auctioneers, Inc.*, 276 Minn. 67, 71, 149 N.W.2d 16, 19 (1967) (misconduct of prevailing party). This deference exists because the trial court "has the feel of the trial." *Lamb v. Jordan*, 333 N.W.2d 852, 856 (Minn.1983).

■ Appellant's new trial motion questioned whether the record supported the trial court's findings of fact, and we must uphold these findings unless they are clearly erroneous. Minn. R. Civ. P. 52.01. A finding is "clearly erroneous" if the reviewing court is " 'left with the definite and firm conviction that a mistake has been made.' " *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn.1999) (quoting *Gjovik v. Strope*, 401 N.W.2d 664, 667 (Minn.1987)). When determining whether findings are clearly erroneous, the appellate court views the record in the light most favorable to the trial court's findings. *Lossing v. Lossing*, 403 N.W.2d 688, 690 (Minn.App.1987); *Rinker v. Rinker*, 358 N.W.2d 165, 167 (Minn.App.1984). Also, appellate courts defer to trial court credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988). We also are mindful of the trial court's extensive commentary on the record in its response to appellant's request for different findings of fact.

■ Appellant's new trial motion also asserted the occurrence of misconduct by respondent. Where evidence is said to conflict with the trial court's ruling on this issue, "the broadest possible discretionary power [is vested] in the trial court." *Grorud*, 287 Minn. at 534, 177 N.W.2d at 53. The refusal to grant a new trial will be reversed only if misconduct is "so prejudicial that it would be unjust to allow the result to stand." *Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346, 352 (Minn.1981); *see, generally*, Minn. R. Civ. P. 61 (requiring that harmless error be ignored). The trial court is in a "much better position than the appellate court" to decide whether alleged misconduct caused prejudice. *Reese*, 276 Minn. at 71, 149 N.W.2d at 19 (quotation omitted).

Having reviewed each of appellant's allegations and having thoroughly reviewed the record, we conclude that the trial court did not commit reversible error in denying appellant's new-trial motion.

a. Preferences of children; alleged misconduct

■ The temporary order prohibited the parties from "complain[ing]" about each other in the children's presence and from trying to "influence" the children's

custodial preferences. Appellant alleges that respondent committed misconduct by "downgrading" her, her family, and her fiancé in front of the children and that he tried to influence the children's custodial preference by promising that he would quit smoking and that the oldest child could decorate his own bedroom. To support her argument, appellant submitted the affidavit of the parties' oldest child.

The trial court rejected these allegations, finding that the oldest child's affidavit failed to identify "specific incidents" of downgrading and that respondent's post-trial affidavit addressed the incidents in question. The court then found that "[t]he alleged 'downgrading' was not downgrading" but, "at most" was "a misunderstanding." Viewing the record in the light most favorable to the trial court's findings, we cannot say that appellant showed these findings to be clearly erroneous. Moreover, the trial court also noted that even if respondent made "disparaging remarks, [appellant] has not shown that these few incidents prejudiced her to the extent she should be granted a new trial." Appellant did not show this finding to be an abuse of the trial court's discretion.

■ Appellant also alleges that respondent committed misconduct by violating the temporary order when he allegedly rehearsed the children's testimony with them. Respondent testified that he and his attorney discussed the proceeding with the children but denied that they rehearsed the children's testimony. Appellant raised this issue in the post-trial proceedings and the trial court's order denying her new-trial motion showed that the court was aware of respondent's testimony. It also stated that "[e]vidence that they were practicing testimony is lacking" and that respondent's attorney "was simply describing the process to the children and obtaining basic information from them[.]" Because these findings are consistent with respondent's testimony and his post-trial affidavit, the record supports the trial court's findings on this issue and the court did not abuse its discretion in refusing to grant a new trial based on the suggestion of rehearsal of testimony.

■ The trial court also rejected appellant's allegations that respondent attempted to bribe the children. It found that respondent "had no reason" to try to influence the children's testimony regarding their custodial choice because the children had already told the evaluator that they wanted to live with respondent. It also found that "[n]o bribes were made by [respondent] * * * [the oldest child] simply misunderstood [respondent's] conduct." Viewed in the light most favorable to the findings, the record supports these findings.

The trial court does not specifically state whether respondent's statement that he would stop smoking was an attempt to bribe the children. But at trial, respondent testified that he told the children he would try to stop smoking and that his attempt to do so was for the children, himself, and his wife. As a result, the trial court was aware of respondent's statements about smoking and its finding that respondent made no bribes is an implicit determination that he did not intend the statement to be a bribe. Intent is a credibility question on which we defer to the trial court. *Lien v. Loraus*, 403 N.W.2d 286, 289 (Minn.App.1987), *review denied* (Minn. June 9, 1987).

Absent clear error on related findings, there was no demonstration that the trial court abused its discretion in its refusal to award a new trial based on assertions that respondent wrongfully influenced the preferences of the children.

b. Other findings on best-interests factors

In addition to its findings related to the preferences of the children, appellant challenges findings that suggest the neutral effect of various best-interests considerations.

One of these assertions of appellant directly disputes the existence of evidence to support a specific trial court finding. Appellant alleges that "there is no evidence" to support the finding that her fiancé and the children have not adjusted well to each other. But the record contains the youngest child's statements to the judge that appellant's fiancé is "kind of mean" and the custody report's statement that the older two children "do not like" appellant's fiancé.

Appellant's other assertions about findings on best-interests factors mistakenly rests on her citation of evidence that may contradict the trial court's findings. When a party challenges a trial court's findings, the evidence "tending directly or by reasonable inference to sustain the * * * findings * * * shall be summarized" by the party challenging the findings. Minn. R. Civ.App. P. 128.02, subd. 1(c); *cf.* Minn.Stat. § 645.44, subd. 16 (1998) (stating, in context of statutory interpretation, "'[s]hall' is mandatory"). When summarizing the evidence supporting a trial court's findings, the party challenging the findings must cite the portions of the record containing those findings. *See* Minn. R. Civ.App. P. 128.02, subd. 1(c) (stating each statement of material fact in appellant's brief "shall" be accompanied by cite to record); Minn. R. Civ.App. P. 128.02, subd. 2 (requiring respondent's brief to conform to same requirements as appellant's brief); *Hecker v. Hecker,* 543 N.W.2d 678, 681–82 n. 2 (Minn.App.1996) (noting "material assertions of fact in a brief properly are to be supported by a cite to the record" and stating such cites are "particularly important" where "the record is extensive"), *aff'd* 568 N.W.2d 705 (Minn.1997).

That the record might support findings other than those made by the trial court does not show that the court's findings are defective. *See, e.g., Elliott v. Mitchell,* 311 Minn. 533, 535, 249 N.W.2d 172, 174 (1976) (affirming trial court's find-

ings despite admitting "the evidence might [have] support[ed] another conclusion"); *Crosby v. Crosby,* 587 N.W.2d 292, 296 (Minn.App.1998) (stating that although appellant's recitation of facts "might prompt another trier of fact to different findings, because there is sufficient contradictory evidence to reasonably support the trial court's findings," appellant's evidence "does not render the trial court's findings clearly erroneous"), *review denied* (Minn. Feb. 18, 1999); *see also Fletcher v. St. Paul Pioneer Press,* 589 N.W.2d 96, 101 (Minn.1999) (stating "[i]t is not the province of [an appellate court] to reconcile conflicting evidence").

To challenge the trial court's findings of fact successfully, the party challenging the findings must show that despite viewing that evidence in the light most favorable to the trial court's findings (and accounting for an appellate court's deference to a trial court's credibility determinations and its inability to resolve conflicts in the evidence), the record still requires the definite and firm conviction that a mistake was made. Only if these conditions are met, that is, only if the findings are "clearly erroneous," does it become relevant that the record might support findings other than those that the trial court made.

There is sufficient evidence of record to support the trial court's findings that numerous best-interests factors favor neither party. Because the court's findings are not clearly erroneous, it is unnecessary for us to further address appellant's discussion of evidence. *See Wilson v. Moline,* 234 Minn. 174, 182, 47 N.W.2d 865, 870 (1951) (stating function of appellate court "does not require us to discuss and review in detail the evidence for the purpose of demonstrating that it supports the trial court's findings," and our "duty is performed when we consider all the evidence, as we have done here, and determine that it reasonably supports the findings").[1] To the end of fairly responding to

---

1. *Wilson* is one of a series of cases in which the supreme court has held that when a party

appellant's arguments, we elect in this case to briefly address some of appellant's summary of evidence that she believes the trial court erroneously disregarded. *See* Minn. R. Civ.App. P. 103.04 (stating appellate court may address any issue as justice requires).

Appellant argues that she "should have been given more credit" in the balancing of the best-interests factor addressing the child's adjustment to home, school, and community and the factor addressing the health of the persons relevant to the custody decision. We cannot reweigh the evidence presented to the trial court. *See, e.g., Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn.1988) (criticizing this court as going beyond its scope of review in a custody appeal by reweighing evidence).

Contending that the trial court should have recognized a predominant intimacy of the mother-child relationship, appellant points out that many of the children's teachers testified to the affection between appellant and the children while only respondent's family testified to the strength of the father-child relationship. There is no dispute that both parents love the children. Significantly, appellant works at the children's school, giving her a great opportunity to show her affection for the children.

Appellant alleges that her constancy in the community has allowed the children to stay in a stable environment for most of their lives. But the trial court found the "stable environment" factor of "limited significance" because (a) the oldest child is entering high school and will attend the same school regardless of the placement of his custody; (b) the second child has only one year of elementary school remaining; and (c) the youngest child has only been in school for a year and established only limited connections to that school.

Appellant's allegation that the trial court's findings do not address respondent's ability to give the children love, affection, and guidance is inconsistent with the court's finding that "[e]ach parent has demonstrated the capacity to give love, guidance, and affection, and to educate the children."

2. Ultimate best-interests determination

Appellant contends that the trial court findings, especially if they are corrected, but even if they are not, do not permit the ultimate finding that it serves the best interests of the children to place their physical custody with respondent.

 The trial court's determination of the ultimate best-interests issue will be affirmed unless it constitutes an abuse of the trial court's discretion or the trial court rationale suggests an erroneous application of law. *Maxfield v. Maxfield,* 452 N.W.2d 219, 221–23 (Minn.1990) (citing *Berndt v. Berndt,* 292 N.W.2d 1, 2 (Minn. 1980) and quoting Minn.Stat. § 518.17, subd. 1 (Supp.1989); reversing placement of custody in favor of primary parent; finding that governing statutes precluded trial court's level of disregard for primary-parenting role; characterizing importance of child's bond with primary parent as "the golden thread running through any best interests analysis").

Citing no decisions since *Maxfield,* appellant seeks identical relief in this case. She alleges that she is the primary caretaker for the youngest child and that *Sefkow* disfavors split custody placements. *Sefkow,* 427 N.W.2d at 215. Aside from the findings of fact that she challenges, she observes that the primary-caretaker finding, found by the trial court to weigh in her favor, was offset only by findings on (a) the expressed preferences of the older children, (b) the intimacy in their relation-

alleges that a number of the trial court's findings are unsupported by the record, the appellate court need not individually address whether each challenged finding is supported by the record. *See, e.g., Pagett v. Northern*

*Elec. Supply Co.,* 283 Minn. 228, 236, 167 N.W.2d 58, 64 (1969); *Board of Educ. v. Sand,* 227 Minn. 202, 205, 34 N.W.2d 689, 692 (1948); *Maust v. Maust,* 222 Minn. 135, 137–38, 23 N.W.2d 537, 539 (1946).

ship with their father that was suggested by this preference, and (c) the strength of relationships the children enjoyed with respondent's mother and other family members. Therefore, she concludes, custody of the children should be placed with her.

Custody placements are to be based on a child's "best interests." Minn. Stat. § 518.17, subd. 3(a)(3) (1998). A child's best interests are the fundamental focus of custody decisions. *E.g., Frauenshuh v. Giese*, 599 N.W.2d 153, 158–59 (Minn.1999) (acknowledging children's best interests are "paramount" concern in resolution of custody issues); *Pikula v. Pikula*, 374 N.W.2d 705, 711 (Minn.1985) (stating guiding principle "in all custody cases" is best interests of child); *State ex. rel. Flint v. Flint*, 63 Minn. 187, 189, 65 N.W. 272, 272 (1895) (noting "paramount" question in custody dispute is "what would be most for the benefit of the infant").

In *Pikula*, the supreme court held that, absent a showing of unfitness, custody of a child too young to express a custodial preference should be placed with the child's primary caretaker. In reaching its primary-parent presumption, *Pikula* noted that the best predictor of a young child's well being was continuity of care of the child by his or her primary caretaker. *Pikula*, 374 N.W.2d at 712. Importantly, the court recognized that (a) the other best-interests criteria in Minn.Stat. § 518.17 were "inherently resistant" to evaluation and "difficult to apply[;]" (b) the "inherent lack of objective [custody] standards aside from primary parent status" results in, among other things, "[i]mprecision in the application of the law[,]" the " 'wrong' results, and in unpredictability of outcome" (c) appellate courts, when reviewing custody determinations involving these other factors, must be "mindful that

trial courts, seeking to apply these factors to reach an intelligent determination of relative degrees of [custodial] fitness," "must aspire to a 'precision of measurement which is not possible given the tools available to the judges[;]' " and (d) the legislature recognized the difficulties posed for courts in custody cases by allowing them to order custody evaluations, but the trial court's ability to ignore a custody evaluation was a recognition of the fact that sometimes custody evaluations did "not adequately provide a judge with [the] needed insight in particular cases[.]" *Pikula*, 374 N.W.2d at 712.

*Maxfield* acknowledged that after the trial court made its decision, the legislature amended the custody statute (a) to require that courts, when placing custody, consider both which party was the child's primary parent and the intimacy of the child's relationship with each parent; and (b) to forbid the courts from making custody placements by considering one statutory best-interests factor to the exclusion of the others. *Maxfield*, 452 N.W.2d at 222 n. 2 (citing 1989 Minn. Laws ch. 248, § 2). Moreover, almost immediately after *Maxfield* was issued, the legislature again amended the custody statute, to explicitly state that "[t]he primary caretaker factor may not be used as a presumption in determining the best interests of the child." 1990 Minn. Laws ch. 574, § 13 (now codified at Minn.Stat. § 518.17, subd. 1(a)). These legislative changes to the custody statute explain why, in the decade since *Maxfield*, no published opinion has explained, applied, or even cited (in more than a passing manner), *Maxfield*'s "golden thread" analysis.[2]

Thus, under current Minnesota law on placing custody of children in disso-

---

2. As of the issuance of this opinion, Minnesota has only two published opinions, other than *Maxfield* itself, mentioning the "golden thread" analysis. And both mention the analysis only in passing and neither is a dissolution case. *See In re Welfare of M.M.*, 452 N.W.2d 236, 240 (Minn.1990) (mentioning

"golden thread" analysis when reviewing custody disposition of child after termination of parental rights); *In re Welfare of M.P.*, 542 N.W.2d 71, 75 (Minn.App.1996) (mentioning "golden thread" analysis on appeal of termination of parental rights).

lution matters, the legislature requires that the decision be based on an undifferentiated balancing of the child's best interests, and the "golden thread" analysis has been abandoned in practice. This is notwithstanding recognition by the supreme court that the analysis required by Minn. Stat. § 518.17 lacks "objective standards" and makes the outcome of disputes unpredictable. *Pikula*, 374 N.W.2d at 712. In the present state of the law, there is no specific, restrictive legal standard for a trial court to use when placing custody in a dissolution proceeding, and there is no articulated, specific standard of law available for use of the appellate court when reviewing whether a best-interests determination, supported by defensible findings that address relevant best-interests factors, constitutes an abuse of trial court discretion or misapplication of the law.[3] Put differently, current law leaves scant if any room for an appellate court to question the trial court's balancing of best-interests considerations.

 Finally, we note that *Maxfield* itself states that "the fact that one parent may be the primary caretaker does not necessarily control who gets custody. All relevant factors must be weighed[.]" 452 N.W.2d at 222, n. 2. Here, even if due regard is given to appellant's caretaker role with the children, especially the youngest of them, the record shows that (a) the older two children do not (currently) have a good relationship with appellant's fiancé; (b) the older children told both the custody evaluator and the district court that they wanted to live with respondent; (c) the evaluator stated that youngest child "does the best when he is with his other siblings;" and (d) the evaluator rec-

ommended that physical custody be placed with respondent. Under these circumstances, even if the law permitted more meaningful scrutiny of the trial court's exercise of discretion, the record supports the conclusion that the trial court did not abuse its discretion by placing the youngest child in respondent's custody with the child's siblings. *See Imdieke v. Imdieke*, 411 N.W.2d 241, 243–45 (Minn.App.1987) (reversing split custody placement, noting, among other things, it was not in best interests of children).

### 3. Newly discovered evidence

Rule 59.01 allows a new trial for "[m]aterial evidence newly discovered" which, with reasonable diligence, could not have been found and entered at trial. Minn. R. Civ. P. 59.01(d). Appellant alleges that she did not learn "the majority" of the information in the oldest child's affidavit until after the children testified. Therefore, she argues, she is entitled to a new trial under rule 59.01(d). The oldest child's affidavit makes a number of allegations, but appellant has pointed only to one subject in her claim of newly discovered evidence. Seeking a new trial on these grounds, appellant alleged to the trial court that respondent tried to influence the children and that this influence could not be discovered "because Respondent and his attorney told the children not to tell [appellant] about meeting with the Respondent's attorney." Although appellant's argument on appeal refers to all of the allegations in the oldest child's affidavit, the only theory properly before this court on the new-evidence issue is the claim involving respondent's attempt to in-

---

**3.** Appellant has not disputed the fact that the trial court's findings address all statutory best-interests factors. *See Weatherly v. Weatherly*, 330 N.W.2d 890, 892 (Minn.1983) (reversing custody award due to erroneous findings and trial court's failure to address statutory criteria that would have weighed in favor of the appellant). There also is no dispute in this case that the record does not introduce best-interests factors other than

those stated by statute. *See* Minn.Stat. § 518.17, subd. 1(a) (1998) (declaring that the "best interests" upon which a trial court is supposed to base a custody disposition are defined as "all relevant factors * * * including," the factors listed in the custody statute); *In re Paternity of B.J.H.*, 573 N.W.2d 99, 102 (Minn.App.1998) (rejecting argument that child's "best interests" are limited to statutory factors).

fluence the children. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (stating, generally, party may raise neither new issue nor new theory on appeal).

 Regarding respondent's alleged attempt to influence the children, the trial court noted that it addressed these allegations in its rejection of appellant's motion for a new trial based on respondent's misconduct. This trial court decision, as we have said, did not involve reversible error. The court also found that "the events complained of were not an attempt by either [respondent] or his attorney to influence the children's testimony" and that the meeting between the children and respondent and his attorney is not newly discovered evidence because that meeting was addressed at trial. Evidence addressed at trial is not newly discovered evidence under the rules. *See* Minn. R. Civ. P. 59.01(d) (allowing new trial for newly discovered evidence that "could not have been found and produced at trial"). The trial court's refusal to order a new trial for newly discovered evidence is consistent with the rules.

### DECISION

The trial court did not abuse its discretion by denying the portion of appellant's new trial motion premised on the assertion that the record does not support the custody placement; because the record supports the trial court's custody-related findings and because those findings address the relevant best-interests factors, we affirm the court's ultimate determination on the placement of physical custody of the children. There also was no abuse of the trial court's discretion in rejecting parts of the new-trial motion alleging that respondent committed misconduct or that appellant had newly discovered evidence.

**Affirmed.**