*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2244**

In re the Marriage of: Christina Lynn Clark, petitioner,
Respondent,

vs.

Shon Raymond Clark,
Appellant.

**Filed July 21, 2014
Affirmed
Reyes, Judge**

Sherburne County District Court
File No. 71FA10341

Diane B. Bratvold, Elise L. Larson, Briggs and Morgan, P.A., Minneapolis, Minnesota; and

Kelly A. Boyd, Bolt & Hoffer Law Firm, Coon Rapids, Minnesota (for respondent)

Michael D. Dittberner, Linder, Dittberner, Bryant & Winter, Ltd., Edina, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Smith, Judge; and Reyes, Judge.

# U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

In this appeal from the district court's grant of respondent-mother's motion to move the parties' children to Georgia, appellant-father argues that the district court erred

by basing its decision on the *Auge* presumption and misapplying the relevant statute.  We affirm.

**FACTS**

Appellant-father Shon Raymond Clark and respondent-mother Christina Lynn Clark married in February 2004.  They have two children: a daughter born in 2006 and a son born in 2010.  In 2010, mother obtained an ex parte order for protection after father allegedly bit her on the arm during an argument and disciplined daughter by hitting her on the head.  Mother commenced marital-dissolution proceedings shortly thereafter, and the marriage was dissolved in January 2011.  Daughter was later diagnosed with related post-traumatic stress disorder.  The dissolution decree granted mother and father joint legal custody of the children but gave sole physical custody to mother.  The decree included a residency restriction prohibiting either party from moving the children out of Minnesota without the other party's written consent or a court order.

After the dissolution, the parties began receiving services from a parenting consultant who recommended that father and daughter participate in reunification therapy.  For seven months, mother resisted reunification efforts by rejecting the therapists proposed by the parenting consultant.  But mother eventually selected a reunification therapist and father and daughter started reunification therapy in October 2011.  Father also met with a parenting coach and received counseling for anger management and gaming addiction.  Meanwhile, daughter's therapist expressed concern that mother was trying to sabotage father's relationship with the children, especially daughter.  Father started unsupervised parenting time with both children in December

2

2011; several of the therapists involved noted that father's relationships with the children improved as his parenting time increased.

In March 2012, mother began a romantic relationship with a man who lives in Georgia. Mother visited him several times during the following months, taking the children with her on two occasions. In May, mother asked father for permission to move the children to Georgia, stating that her employer was training her for a position there and that she might lose her job if she did not relocate. She also told the parenting consultant about the proposed move, representing it as an employment opportunity and falsely stating that daughter's therapist was in favor of it. She did not disclose her romantic relationship to father or the parenting consultant. In June, father informed mother that he would not consent to her request to move the children to Georgia, and mother told father and the reunification therapist that her employer was requiring her to move to Georgia. In fact, mother's employer had put her on a performance-improvement plan. Mother's employer terminated her employment later in June, but mother concealed her job loss for several months. Mother married the man in Georgia in September 2012 but concealed the marriage from father until April 2013, when she moved for a court order granting her permission to move the children.

At the hearing on her removal motion, mother asserted that she would have better employment opportunities in Georgia, that the cost of living is lower there, and that the children would attend better schools. She proposed several concessions, including increased parenting time for father during school breaks and weekend visits in Georgia, reduction of father's child-support obligation to offset travel expenses, and reduction of

her childcare costs to reflect lower costs in Georgia. Father opposed the motion, arguing it would have a detrimental impact on his relationships with the children, that mother would use the move to inhibit those relationships, and that the children have better educational opportunities in Minnesota.

In October 2013, the district court granted mother's motion to change the children's residence. While noting concerns about mother's dishonesty and the difficulties facing father in his efforts to maintain his relationships with the children, the district court also noted that mother had recently cooperated with father's parenting-time schedule and decided that mother had succeeded in showing that the move would be in the children's best interests. The district court stayed implementation of its order pending appeal.

## D E C I S I O N

"Appellate review of custody modifications and removal cases is limited to considering whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008) (quotations omitted). We "set aside a district court's findings of fact only if clearly erroneous, giving deference to the district court's opportunity to evaluate witness credibility." *Id.* (citation omitted). "Findings of fact are clearly erroneous where an appellate court is left with the definite and firm conviction that a mistake has been made." *Id.* (quotations omitted).

## I.

Father argues that the district court erred by basing its decision on the outdated *Auge* presumption. The presumption provided that a sole physical custodian's motion to remove a child to another state should be granted unless the opposing party establishes, by a preponderance of the evidence, that the move is not in the child's best interest. *Auge v. Auge*, 334 N.W.2d 393, 399 (Minn. 1983). In 2006, the legislature eliminated the *Auge* presumption by amending Minn. Stat. § 518.175, subd. 3. 2006 Minn. Laws ch. 280, § 13, at 1110–11. In its amended form, the statute places the burden of proof on the moving party unless the court finds that the moving party has been the victim of domestic abuse at the hands of the opposing party.[1] Minn. Stat. § 518.175, subd. 3(c) (2012). The statute also provides that courts considering removal motions "shall apply a best interests standard," and provides a non-exclusive list of eight best-interests factors. *Id.*, subd. 3(b).

Father highlights three passages from the district court's order in which the court, he argues, used language that "gives unwarranted vitality to the *Auge* presumption" by "ignor[ing] the intent of the 2006 amendments." A full reading of the district court's memorandum reveals a different picture. The memorandum begins with an express acknowledgment of the applicable statute and the best-interests analysis it requires, and later uses the referenced language within a thorough, six-page analysis of the statutory best-interests factors. The court concluded its analysis by stating that "[u]pon consideration of the statutory factors, [mother] has demonstrated that the proposed

---

[1] Although an order for protection had been issued in 2010, mother did not claim that she was a victim of domestic abuse for purposes of her removal motion.

move . . . is in the children's best interests." Thus the district court correctly placed the burden of proof on mother as the moving party and not on father as the opposing party. Additionally, the district court correctly based its decision on a detailed, fact-specific analysis of the best-interests factors, as required by the statute.

Because the district court completed a thorough, detailed, fact-specific analysis of the statutory best-interests factors, and put the burden of proof on mother as the moving party, we conclude that the district court did not base its decision on the *Auge* presumption. Instead, it properly rooted its decision in the process required by the applicable statute.

## II.

Father also argues that the district court erred by improperly applying the law, taking issue with the district court's analysis of the statutory best-interests factors. District courts applying best-interests factors are entitled to broad discretion, and the law "leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations." *Vangsness v. Vangsness*, 607 N.W.2d 468, 477 (Minn. App. 2000). We view the record in the light most favorable to the district court's findings and defer to the district court's credibility determinations. *Id.* at 472.

As noted above, the district court analyzed the statutory best-interest factors in detail. It expressed serious reservations about the conduct of both parents. The court characterized father's relationship with the children as "difficult" but noted that father had "worked hard to rehabilitate his relationship" with them. The court expressed concern about the children's separation from father, but noted that the parenting-time

6

schedule mother proposed gives father significantly more parenting time than he previously enjoyed. The court looked poorly on mother's attempts to block reunification therapy and observed that mother had "done little to promote [father's] relationship with the children." The court also detailed mother's dishonest and manipulative conduct, but noted that she had "recently cooperated with [father's] parenting time schedule." These findings are not clearly erroneous.

Read as a whole, the court's analysis of the best-interest factors shows that none was resoundingly in favor of either party, some favored neither, and some marginally favored one or the other. The tone of the opinion suggests that the district court had substantial difficulty reaching its decision and was deeply concerned about what it called "the stark reality of these children's lives." Yet, the district court decided mother had demonstrated that the move was in the children's best interests. That decision was not an abuse of discretion. We conclude that the district court, in a very difficult case, properly applied the law and acted within its discretion.

**Affirmed.**