*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1752**

In re the Marriage of:
Diane Drays Hill, petitioner,
Respondent,

vs.

Michael C. Hill,
Appellant.

**Filed September 21, 2015
Affirmed
Kirk, Judge**

Hennepin County District Court
File No. 27-FA-000301187

Jana Aune Deach, Moss & Barnett, P.A., Minneapolis, Minnesota (for respondent)

Denis E. Grande, DeWitt Mackall Crounse & Moore S.C., Minneapolis, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Kirk, Judge; and Toussaint, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**KIRK**, Judge

Appellant-father challenges the district court's denial of his motion to modify his child-support obligation, arguing that it abused its discretion by finding no change in circumstances warranting a modification of his current child-support obligation. We affirm.

## FACTS

In August 2005, respondent-mother Diane Drays Hill petitioned for dissolution of her 29-month marriage to father Michael C. Hill. The parties have two minor children. In November 2005, the parties entered into a parenting-plan stipulation where they agreed to share joint legal custody and that mother had primary physical custody subject to father's reasonable visitation.

The parenting plan, which was incorporated into the judgment and decree, outlined the parties' agreement concerning parenting arrangements and child-related expenses, as outlined in Minn. Stat. § 518.1705 (2014). The parties agreed that mother earned a significant income as an entertainment attorney prior to the birth of the parties' children, and that she would have the option to be a stay-at-home parent for at least five years after the dissolution. The parties also agreed that father shall pay "all reasonable child-related expenses until the children reach the age of eighteen (18) or graduate from high school, whichever occurs later."

In January 2007, the district court entered a decree dissolving the parties' marriage and incorporating the terms of both the written marital-termination agreement and

parenting-plan stipulation into the judgment. The decree stated that mother is an attorney, but "is not currently employed and is a stay-at-home mother. It is agreed [mother] may become employed part- or full-time at any time she chooses." In both the parenting-plan stipulation and judgment and decree, the parties chose not to reveal their incomes, net worth, or debts, ostensibly due to the parties' desire to keep information regarding their net worth private. According to the decree, father's child-support obligation was initially set at $5,600 per month, with a 3% annual cost-of-living increase. Father's current monthly child-support obligation is $6,687. But the decree did not provide any written analysis under Minn. Stat. § 518A.43, subd. 1 (2014), as to why the child-support payment deviated from the maximum allowed under the parental income and child support (PICS) guidelines of $1,727 per month, and it did not characterize father's child-support obligation as a deviation.

On June 6, 2014, father moved the district court to modify his child-support obligation on the ground that there had been a substantial change in circumstances since the entry of the decree. Father argued that mother, who had returned to work as an attorney, had earned over two-million dollars in 2012 and $284,939 in 2013. Father also challenged many of the children's monthly expenses as exaggerated, inaccurate, or duplicative.

Mother moved the district court to deny father's motions in their entirety, or, in the alternative, award a continued upward deviation of child support. Along with her motion, mother included an affidavit explaining the dramatic spike in her 2012 income. Mother's 2012 tax return indicated that she earned $1,998,008 from her employment as an

3

entertainment attorney with D3 Enterprises, LLC, a subchapter S corporation. Mother explained that approximately $1.6 million of her 2012 earnings were set aside in a reserve fund for payment of any future royalties owed to recording artists, songwriters, record labels, and music publishers arising from her work on an entertainment project. Mother admitted that it was completely speculative to predict the amount of the reserve fund that would eventually be distributed for royalty payments. Although various advisors had informed mother that the reserve fund was "restricted funds," meaning that she would not face fines if she chose not to distribute the contents of the fund, she stated that out of an abundance of caution she chose to report the potential income to the Internal Revenue Service.

Following a hearing on the parties' cross motions, the district court denied both parties' motions to modify child support. The district court found that it was difficult to assess father's motion to modify child support because the parties, who were represented by counsel, chose to be silent in providing financial details, labeling the amount of child support as a deviation, and analyzing the deviation under the statutory factors outlined in Minn. Stat. § 518A.43, subd. 1. Despite the parties' refusal to provide much financial information, the district court found that father's annual income in retirement was in excess of $700,000, and that mother's annual income was approximately $294,000.

The district court analyzed the statutory factors supporting an upward deviation of child support under section 518A.43, subdivision 1, and found that father failed to meet his burden to modify his child-support obligation. The district court found that both the parenting-plan stipulation and decree contemplated mother's return to work and that her

4

two-million dollar income in 2012 was a one-time distribution and would not be included in its determination of her annual income. The district court made several findings relating to the children's expenses. The district court found that the combined expenses of both children totaled $8,204 per month, and that the children benefitted from an "extremely high standard of living" both prior to and after the parties' divorce. Moreover, the parents provided an economically commensurate standard of living for the children, and it was "inconceivable" to the court that had the parents remained married "that the children would have enjoyed fewer activities, support, and opportunities." The district court found that there had been no attempt by mother to improve or increase the children's standard of living through the stipulated child-support payments.

Father appeals.

## D E C I S I O N

Whether to modify child support is discretionary with the district court, and the court's decision will be altered on appeal only if it resolved the matter in a manner against logic and the facts on record. *Putz v. Putz*, 645 N.W.2d 343, 347 (Minn. 2002). We will uphold a district court's factual findings unless they are clearly erroneous. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000). A finding of fact is clearly erroneous when we are left "with the definite and firm conviction that a mistake has been made." *Id.* (quotation omitted). Although a child-support stipulation "is one factor to be considered in modification motions, child support relates to nonbargainable interests of children and is less subject to restraint by stipulation than are other dissolution matters." *O'Donnell v. O'Donnell*, 678 N.W.2d 471, 475 (Minn. App. 2004)

5

(quotation omitted). A district court may modify a child-support order if a party shows that there has been a substantial change in circumstances that renders the terms of the existing order unreasonable and unfair. Minn. Stat. § 518A.39, subds. 1, 2 (2014). An order may have become unreasonable and unfair if an obligor or obligee experienced a substantial increase or decrease of income. *Id.*, subd. 2(a)(1).

Father argues that the district court abused its discretion by failing to take into account the interest, dividends, capital gains, and ordinary income from D3 Enterprises, LLC, when calculating mother's income from 2010–2013, and failing to reduce father's child-support obligation in light of mother's increased income, the decrease in his income since retiring, and the children's inflated monthly expenses. Father requests that this court adjust his child-support obligation in accordance with statutory PICS guidelines, without consideration of the health insurance adjustments, or, in the alternative, set his child-support obligation at less than $2,000 per month as an upward deviation.

First, the district court did not clearly err in determining mother's income. Where a child-support obligor's income fluctuates, an income averaging method takes into account fluctuations and more accurately measures income. *Veit v. Veit*, 413 N.W.2d 601, 606 (Minn. App. 1987) (holding that when self-employed business income fluctuates, income averaging more accurately measures obligor's net income). Appellate courts do not recognize any standard time period for averaging income. *Id.* Father argues that the district court erred in averaging mother's gross income because it ignored her income from 2012 and 2013. The district court found that mother earned between $229,462 and $369,115 since the marital dissolution, and that her average gross annual

6

income was approximately $294,000. The district court's figures accurately reflect mother's total income, which includes her capital gains, interest, and dividends from her tax forms. Here, there is no evidence that the district court ignored mother's 2013 income of $255,339 because it fell squarely within the income range stated in the court's order.

We are not persuaded by father's argument that the district court erred in failing to characterize the 2012 distribution from D3 Enterprises, LLC, as gross income for child-support purposes. Father primarily relies on *Haefele v. Haefele*, 837 N.W.2d 703 (Minn. 2013), in support of his argument. The supreme court in *Haefele* held that "gross income" as defined by Minn. Stat. §§ 518A.29(a) and 518A.30 (2014) for the purposes of calculating child support includes a parent's receipt of a distribution from ownership in a subchapter S corporation. 837 N.W.2d at 711. But the court also cautioned that because strict application of this holding could result in unfairness to the parent receiving the distributions, especially in situations where the parent was not in control of how or when the corporation distributed the monies, the district court, when addressing whether to deviate from the presumptively appropriate guideline-support obligation, can take into account whether the parent's money included in gross income was actually available to the parent to pay child support. *Id.* at 714.

On this record, any error by the district court in excluding mother's receipt of royalty income from D3 Enterprises, LLC, in 2012 is harmless in light of the district court's findings explaining why it deviated from the guideline-support obligation. Specifically, while a distribution from ownership in D3 Enterprises, LLC, a subchapter S

corporation, is "gross income" for child-support purposes under section 518A.30, the record demonstrates that the monies are not technically available to mother because an unknown portion is reserved for payment to third parties in the future. Thus, on this record, we decline to remand the question. *See* Minn. R. Civ. P. 61 (requiring harmless error to be ignored); *see also Grein v. Grein*, 364 N.W.2d 383, 387 (Minn. 1985) (declining to remand and affirming the district court in a child-custody case when "from reading the files, the record, and the court's findings, on remand the [district] court would undoubtedly make findings that comport with the statutory language" and reach the same result).

Moreover, mother's present high income as an entertainment attorney does not constitute a substantial change in circumstances because her high-earning capacity and eventual return to work was clearly contemplated by the parties at the time that they entered into the parenting-plan stipulation and decree. *See O'Donnell*, 678 N.W.2d at 477 (denying father's motion to modify child support based on an increase in expenses that were reasonably foreseeable at the time of the agreement, and that father knowingly and intelligently agreed to a deviation from the guidelines). Absent ambiguity, it is not proper for a district court to interpret a stipulated judgment. *Starr v. Starr*, 312 Minn. 561, 562-63, 251 N.W.2d 341, 342 (1977). There is also no evidence in the decree, as father alleges, that mother negotiated a spousal maintenance buy-out and cash property settlement award of $1,820,000 in order for her to remain a stay-at-home parent. The decree is silent as to why mother agreed to the buy-out.

Further, the district court did not err in concluding that father failed to prove that his child-support obligation is both unreasonable and unfair under Minn. Stat. § 518A.39, subds. 1, 2. Father argues that his current child-support obligation is unreasonable and unfair for numerous reasons including mother's present high income, the decrease in his income since retiring, and that the children's expenses have decreased since the marital dissolution as they no longer utilize the services of a nanny.

The district court properly addressed the statutory factors of Minn. Stat. § 518A.43, subd. 1, when it upheld father's child-support obligation. *Haefele*, 837 N.W.2d at 708. In the decree, father not only voluntarily agreed to pay a higher amount of child support than recommended by PICS guidelines, but now concedes that he can afford to pay the current child-support amount. The parties also agreed in the decree that mother would pay the children's expenses through father's child-support obligation.

The record also demonstrates that the children's current monthly expenses are a direct result of the parties' unusually high standard of living, and exceed father's current child-support obligation. Minn. Stat. § 518A.43, subd. 1(1), (2). Mother included an affidavit documenting the children's monthly expenses of $8,704 per month. These expenses do not include mother's cost to house the children, a private Montessori school, or a nanny. Father admitted in his motion to the district court that the children enjoy a higher standard of living with him since he retired than with mother. It is also clear that the children's standard of living would not have decreased had the parents stayed together. *See id.*, subd. 1(3). There also does not appear to be any evidence that the children's lifestyle has measurably improved since mother returned to work. Father

failed to show how lowering his child-support obligation would be in the children's best interest under Minn. Stat. § 518A.37, subd. 2(5) (2014).

**Affirmed.**