**In re the Marriage of Luke Edward SCHALLINGER, petitioner, Respondent,**

v.

**Roxanne Kathleen SCHALLINGER, Appellant.**

No. A04–2196.

Court of Appeals of Minnesota.

July 12, 2005.

A. Larry Katz, Susan A. Daudelin, Katz, Manka, Teplinsky, Due & Sobol, Ltd., Minneapolis, MN, for respondent.

Jonathan J. Fogel, Fogel Law Offices, P.A., Minneapolis, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge, SHUMAKER, Judge, and CRIPPEN, Judge.*

## OPINION

KLAPHAKE, Judge.

On appeal from marital-dissolution proceedings, appellant challenges the district court's order (1) awarding joint physical custody; (2) denying maintenance; (3) calculating child support; (4) paying off respondent's portion of the property division

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

by invading appellant's retirement account; (5) adopting respondent's proposed judgment verbatim; and (6) denying attorney fees. Because the district court did not abuse its discretion or err in its application of the law, we affirm.

## FACTS

Appellant Roxanne Schallinger and respondent Luke Schallinger were married on July 22, 1989, and have two children; M.L.S., born December 30, 1991, and M.A.S., born December 29, 1993. After the parties separated in May 2001, appellant remained in the family home, and respondent purchased a home approximately two blocks away.

Both parties were employed full time at 3M when they met and were married. Three months after the birth of their first child, appellant began working three days per week and continued working part time through the time of the separation.

During the marriage, respondent testified that both parties divided the duties of caring for the children. On the days appellant worked, respondent prepared the children in the morning and took them to school. In the evenings, respondent played with the children while appellant prepared the meals.

Respondent earns a net monthly income of $3,883.80 as a Senior Research Specialist at 3M and receives a quarterly profit-sharing bonus. As a Laboratory Information Technology Support Analyst, appellant earns a net monthly income of $1,350 and also receives a quarterly profit-sharing bonus.

Since the time of the separation, the parties have shared joint legal and physical custody of their two children. The parties agreed to a schedule that allows for respondent to be with the children every other weekend from Thursdays after school to Monday mornings, with overnights every Tuesday evening. This parenting schedule gives respondent 43% of the time with the children and appellant the remaining 57% of the time.

The older child, M.L.S., reported to the custody evaluator that he was more comfortable spending time with appellant. M.L.S. reasoned that he had trouble sleeping at respondent's home, his friends were near appellant's home,[1] and he had concerns about respondent's anger. Nevertheless, the custody evaluator recommended the parties share joint physical and legal custody.

The district court granted joint physical and legal custody, determined child support according to the *Hortis/Valento* formula, and divided the marital assets. This appeal follows.

## ISSUES

1. Did the district court abuse its discretion in granting joint physical custody?

2. Did the district court abuse its discretion by denying appellant maintenance?

3. Did the district court err in calculating respondent's child support obligation?

4. Was it an abuse of discretion to order appellant to satisfy the property division with her retirement account?

5. Did the district court err in adopting respondent's proposed judgment and decree verbatim?

6. Is appellant entitled to attorney fees?

## ANALYSIS

### I. Custody

 Appellant argues that the facts do not support an award of joint physical custody. A district court has broad discretion to provide for the custody of the par-

---

1. Respondent did not purchase the home in the neighborhood until shortly before trial.

ties' children. *Durkin v. Hinich,* 442 N.W.2d 148, 151 (Minn.1989). The law "leaves scant if any room for an appellate court to question the trial court's balancing of best-interests considerations." *Vangsness v. Vangsness,* 607 N.W.2d 468, 477 (Minn.App.2000). Appellate review of custody determinations is limited to determining whether the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Silbaugh v. Silbaugh,* 543 N.W.2d 639, 641 (Minn.1996). A district court's findings of fact will be sustained unless they are clearly erroneous. *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn. 1985).

■■■ The controlling principle in all child custody determinations is the best interests of the child. *Id.* at 711; Minn. Stat. § 518.17 (2004). In *Maxfield v. Maxfield,* 452 N.W.2d 219, 221–23 (Minn. 1990), the supreme court acknowledged that the legislature amended the custody statute to forbid courts from making custody placements by considering one statutory best-interests factor to the exclusion of the others. *Id.* at 222, n. 2 (citing 1989 Minn. Laws ch. 248, § 2). Thus, under current Minnesota law, a custody decision must be based on a balancing of the relevant statutory best interests factors.

■■■ In 1981, the legislature introduced additional factors that must be considered in a joint physical custody determination:

 (a) the ability of parents to cooperate in the rearing of their children;

 (b) methods for resolving disputes regarding any major decision concerning the life of the child, and the parents' willingness to use those methods;

 (c) whether it would be detrimental to the child if one parent were to have sole authority over the child's upbringing; and

 (d) whether domestic abuse, as defined in section 518B.01, has occurred between the parents.[2]

Minn.Stat. § 518.17, subd. 2 (2004). There is neither a statutory presumption disfavoring joint physical custody, nor is there a preference against joint physical custody if the district court finds that it is in the best interest of the child and the four joint custody factors support such a determination. As required by Minn.Stat. § 518.17, subd. 1, the district court considered and made detailed findings on the statutory factors. *See Durkin,* 442 N.W.2d at 151 (basis for custody determination must be set forth with high degree of particularity).

### A. Wishes of the Parents

The first statutory factor identified in Minn.Stat. § 518.17 is the wishes of the parents. The district court found and the record supports that appellant sought joint legal custody and sole physical custody of the children, and respondent sought joint legal and physical custody.

### B. Reasonable Preference of Child

The district court must consider the reasonable preference of the children. In considering this factor, the court found the younger child not old enough for reasonable preference, but took the older child's preference into consideration. The custody evaluator testified that M.L.S. reported that he was more comfortable at appellant's home for various reasons, one being that he was closer to his friends. But the district court found that respondent's purchase of a home near appellant rectified that concern. M.L.S. also reported difficulty sleeping at respondent's home. There was testimony that the sleeping problems were being addressed by allowing M.L.S. to sleep with his brother and the situation had improved. Counseling

---

**2.** Minn.Stat. § 518.17, subd. 2(d) was added in 1989.

also contributed to alleviation of the sleeping problems.

The custody evaluator testified that M.L.S. had concerns about respondent's occasional outbursts of anger. The court found that the continued counseling sessions have helped M.L.S. and respondent resolve some of their previous difficulties. The record reveals that respondent has had fewer outbursts of anger since the separation and since receiving medical care for his insomnia and depression.

### C. Primary Caretaker

The district court found both parties to be the children's primary caretaker. This finding is also supported in the record. The custody evaluator concluded that appellant spent most of the time with the children, especially the younger child, and respondent spent more time playing with the children. Although appellant worked part time and thus was available to spend more time with the children, respondent testified that during the marriage he took care of the children in the evening when he came home from work so that appellant could prepare dinner and have some time to herself. He further testified that on the days appellant worked, he prepared the children in the morning by dressing and feeding them, and taking them to school.

### D. Intimacy of the Relationship Between Parent and Child

The next factor to consider in determining custody is the intimacy of the relationship between the parent and the child. The court found that respondent is actively involved in the children's lives on a daily basis and supportive of their interests in sporting activities.

### E. Interaction and Interrelationship of Children and Parents

The next factor is the interaction and interrelationship of the child with a parent or parents, siblings, and any other person who may significantly affect the child's best interests. The district court found that respondent and the children had developed their own way of doing things at his home. The older child helps the younger child with homework, and the family works together to get work done.

### F. Child's Adjustment

The district court must consider the child's adjustment to home, school, and community. The district court found, and the record supports, that both children were doing well and have remained in the same school and community and will continue to do so, given the proximity of the parties' homes. Both children's teachers reported to the custody evaluator that they were doing well. The children were always well dressed and prepared for school, and the teachers were unable to discern which home they had come from each morning.

### G. Length of Time Child has Lived in Environment

Next, the district court considers the length of time that the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity. The district court found that the children's environment had stabilized significantly since the separation and that respondent maintained continuity for the children by buying a new home in the neighborhood so they could remain in the same schools and community, and near their friends.

### H. Permanence, as a Family Unit, of Existing or Proposed Custodial Home

The next factor to consider in a custody determination is the permanence of the

existing or proposed custodial home. As noted above, respondent purchased a home in the same neighborhood as appellant in order for the children to remain close to their friends and at the same school.

### I. Mental and Physical Health of Those Involved

The district court must consider the mental and physical health of those involved. The court found that respondent has worked with a therapist to conquer his long-term insomnia and depression and is currently taking medication. Appellant is physically and mentally healthy, as is M.L.S. Although M.L.S. faced some sleep issues when his parents first separated, he has sought counseling and the situation has improved. M.A.S. has epilepsy, seizures, and mild cerebral palsy, but is doing well in school and has adjusted well to the change. The record supports these findings.

### J. Capacity and Disposition to Give the Child Love

Next, the court considers the capacity of each party to provide the children with love, affection, and guidance and to continue to raise the children in the child's culture and religion. The court found that both parents love the children and provide affection and guidance. Respondent joined a church and the children attend services with him. Appellant is supportive of the children being a part of respondent's religion.

### K. Joint Custody Factors

In addressing the additional factors necessary when joint physical or legal custody is sought, the district court contemplated the situation the parties have lived with for the last two years. The court found that the parties have functioned well since their separation with a joint physical custody

agreement, that they had been able to resolve many conflicts regarding the children, and that they agreed to use a parenting consultant to address future problems. The court concluded that it is in the children's best interests for both parents to be actively involved in their lives. The record supports the district court's finding that the joint physical custody arrangement has been successful for the past two and a half years.

Appellant contends that respondent was verbally and physically abusive toward her. The district court did not make a finding of domestic abuse as defined in Minn.Stat. § 518B.01 (2004). The district court found that appellant exaggerates respondent's outbursts of anger and labeled them as "isolated incidents associated with insomnia and depression." The district court concluded that respondent has taken the appropriate measures to deal with his anger issues and that he and M.L.S. have been able to find a resolution to some of the difficulties that previously occurred.

The custody evaluator's testimony supports the court's findings. She concluded that although there was verbal abuse, there was no pattern of domestic abuse. The custody evaluator did not feel that respondent's anger problems were of significant concern regarding the children. After speaking with the various mental health professionals who evaluated respondent, the custody evaluator concluded that the serious anger problems occurred prior to the separation and were caused by his depression and the stress of the relationship.

The district court considered all the statutory factors in great detail, and the record supports its findings; thus, the court did not abuse its discretion in awarding joint custody.

## II. Maintenance/Imputed Income

Appellant contends the district court improperly imputed income to her for the purpose of determining spousal maintenance. A district court's spousal maintenance determination will not be disturbed absent an abuse of that court's discretion. *Erlandson v. Erlandson,* 318 N.W.2d 36, 38 (Minn.1982). This court will not find an abuse of discretion unless the district court's resolution of the matter "is against logic and the facts on record." *Rutten,* 347 N.W.2d at 50 (citation omitted). Unless the findings of fact are clearly erroneous, they must be upheld. Minn. R. Civ. P. 52.01; *Gessner v. Gessner,* 487 N.W.2d 921, 923 (Minn.App.1992).

Maintenance awards are governed by Minn.Stat. 518.552, subd. 1 (2004), which allows a court to grant maintenance if a spouse (1) lacks sufficient property to provide for "reasonable needs ... considering the standard of living established during the marriage," or (2) cannot provide self-support. Appellant testified that if she worked full time in her current position, she could earn approximately $40,000 per year in gross income. The court found that appellant is partially self-supporting and does not demonstrate a need for spousal maintenance because she has the ability to work full time, but chooses not to. Because she remained in the work force throughout the marriage, the district court found that she had maintained sufficient education and training to enable her to find appropriate employment to become fully self-supporting. The court found that appellant "has the ability, skills, experience, and earning capacity to provide adequate income to meet her necessary monthly expenses.... [Appellant]'s choice not to seek full-time employment does not mean that she lacks the ability to be self-supporting."

Appellant claims these findings constitute an "imputation of income" requiring a further finding of bad faith. *See Carrick v. Carrick,* 560 N.W.2d 407, 410 (Minn.App.1997). We disagree. The district court did not "impute" any specific amount of income. The district court's findings simply reflect appellant's general ability to be self supporting. While "imputation of income" is a method of establishing self support, it is not the only way a district court can find that a party has the ability to meet needs independently.

In determining spousal maintenance, the district court must consider "the financial resources of the party seeking maintenance ... and the party's ability to meet needs independently" and "the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance." Minn.Stat. 518.552, subd. 2(a), (g) (2004); *see Bourassa v. Bourassa,* 481 N.W.2d 113, 115 (Minn.App.1992) (explaining that task is basically to balance recipients need against obligors financial condition).

Here, the district court found that respondent's net monthly income after paying $507 per month for child support is $3,793; his reasonable monthly budget is $3,847. While appellant is not able to meet her needs with her current net income of $1,350 per month, the district court found that she was in "good physical and emotional health, and has no health conditions that prevent her from seeking full-time employment." Thus, appellant is able to expand her employment two days per week and earn approximately $3,383 per month gross. Balancing the financial needs of appellant and her ability to meet those needs against the financial condition of respondent, the district court did not abuse its discretion in denying spousal maintenance.

## III. Child Support

A district court has broad discretion to provide for the support of the parties' children. *Putz v. Putz,* 645 N.W.2d 343, 347 (Minn.2002). A district court abuses its discretion when it sets support in a manner that is against logic and the facts on record or misapplies the law. *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984) (against logic); *Ver Kuilen v. Ver Kuilen,* 578 N.W.2d 790, 792 (Minn. App.1998) (application of law). A district court's findings on net income for purposes of child support will be affirmed on appeal if those findings have a reasonable basis in fact and are not clearly erroneous. *State ex rel. Rimolde v. Tinker,* 601 N.W.2d 468, 470 (Minn.App.1999). A determination of the amount of an obligor's income for purposes of child support is a finding of fact and will not be altered on appeal unless clearly erroneous. *See Ludwigson v. Ludwigson,* 642 N.W.2d 441, 446 (Minn.App. 2002).

The *Hortis/Valento* formula is presumptively appropriate for setting support when parties share joint physical custody. *Schlichting v. Paulus,* 632 N.W.2d 790, 792–93 (Minn.App.2001); *Valento v. Valento,* 385 N.W.2d 860, 863 (Minn.App. 1986) (stating that in joint custody arrangement, party's support obligation is determined by guidelines amount for the period of time other parent has custody), *review denied* (Minn. June 30, 1986). The district court properly applied the *Hortis/Valento* child-support formula in setting respondent's monthly support payment. Thus, the district court did not abuse its discretion in setting child support.

## IV. Tax Consequence of Property Equalizer

Appellant argues for the first time on appeal that the district court erred in ordering her to satisfy the property division by invading her retirement account. Because appellant did not raise this issue to the district court in her motion for amended findings or a new trial, she is unable to raise it on appeal. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (generally, issues not raised below will not be considered on appeal).

## V. Adoption of Respondent's Proposed Judgment and Decree

Appellant contends that she was denied an unbiased and independent review of the evidence by the district court's use of respondent's proposed findings of fact and conclusions of law. A district court's verbatim adoption of a party's proposed findings and conclusions of law is not reversible error per se. *Bliss v. Bliss,* 493 N.W.2d 583, 590 (Minn.App. 1992), *review denied* (Minn. Feb. 12, 1993); *Sigurdson v. Isanti County,* 408 N.W.2d 654, 657 (Minn.App.1987), *review denied* (Minn. Aug. 19, 1987). Adoption of a party's proposed findings by a district court is generally an accepted practice. *Bliss,* 493 N.W.2d at 590. But if a court adopts a proposed order, it raises the question of whether the court independently evaluated the evidence. *Id.* A reviewing court examines the findings to determine whether they are clearly erroneous. *Kohn v. Minneapolis Fire Dep't,* 583 N.W.2d 7, 14 (Minn.App.1998), *review denied* (Minn. Oct. 20, 1998); *Sigurdson,* 408 N.W.2d at 657; *see* Minn. R. Civ. P. 52.01.

Based on a review of the record and the district court's extensive findings of fact and conclusions of law, we conclude that the district court evaluated the evidence independently. Thus, the district court did not err in adopting respondent's proposed order.

## VI. Attorney Fees

Appellant also challenges the district court's ruling on need-based attorney

**24**

fees. Minn.Stat. § 518.14, subd. 1, provides that attorney fees shall be awarded if the court finds (1) the fees are necessary to a party's good-faith claim; (2) the party from whom fees are sought has the means to pay them; and (3) the party who seeks the fees does not have the means to pay them. An award of attorney fees under Minn.Stat. § 518.14, subd. 1 (2004), "rests almost entirely within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Crosby v. Crosby*, 587 N.W.2d 292, 298 (Minn.App. 1998) (quotation omitted), *review denied* (Minn. Feb. 18, 1999).

██ The district court found the award of attorney fees inappropriate because appellant paid her attorney and expert fees. The district court also noted that appellant chose to liquidate approximately $30,000 from the nonmarital portion of her 3M VIP account. Additionally, she requested and received an advance marital fund distribution to pay her attorney fees.

Attorney fees are granted to parties who do not have the means to carry on or contest a proceeding. Minn.Stat. § 518.14, subd. 1. It is evident from the record that appellant was able to pay her attorney. The district court did not abuse its discretion in determining that appellant had the means to pay her attorney fees, thus denying her request for fees.

## DECISION

The district court did not abuse its discretion by granting joint physical custody where the record supports both the best interests and additional joint custody findings, or by determining respondent's child-support obligation based on the legal custody determination. The district court's denial of maintenance is supported by the record, when respondent's ability to pay is balanced against appellant's need for maintenance. Because the district court's findings reveal an independent review of the record, the district court did not err in adopting respondent's proposed order. The record supports the district court's finding that appellant had the means to pay her attorney fees. Thus, the district court did not abuse its discretion in denying attorney fees.

**Affirmed.**