*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1700**

In re the Marriage of:
Kathryn Suzanne Neufeld Hare,
n/k/a Kathryn Suzanne Neufeld, petitioner,
Respondent,

vs.

Robert Russell Hare,
Appellant.

**Filed August 4, 2014
Affirmed
Hudson, Judge**

Stearns County District Court
File No. 73-FA-11-3209

Virginia A. Marso, Marso & Kremer Law Office, Waite Park, Minnesota (for respondent)

Robert R. Hare, Upsala, Minnesota (pro se appellant)

Considered and decided by Smith, Presiding Judge; Halbrooks, Judge; and Hudson, Judge.

## U N P U B L I S H E D   O P I N I O N

**HUDSON**, Judge

In this marital dissolution dispute, pro-se appellant husband argues that the district court abused its discretion by denying his claim for maintenance from respondent wife, erred by ordering him to pay a debt owed to a third party, and abused its discretion by

granting respondent legal custody of the parties' second-youngest child and granting conduct-based attorney fees. We affirm.

## FACTS

The district court issued a judgment dissolving the 23-year marriage of appellant Robert Hare and respondent Kathryn Neufeld in 2012. At the time of trial, appellant was working intermittent part-time jobs; respondent was a teacher for the Albany school district who worked more than 80%, but less than 100%, time. The parties have two minor children. Appellant has proceeded pro se throughout this action.

While the dissolution was pending, respondent sought permission from the district court to take the children on a family trip to Canada, alleging that appellant would not sign a permission slip unless she agreed to his proposed summer parenting schedule. In response, appellant moved for appointment of a parenting consultant or family counseling. After a June 2011 hearing, the district court found that, although appellant had recently signed the slip, he had unreasonably contributed to the length and expense of the proceeding by failing to timely sign it, refusing to cancel the hearing because of summer parenting-schedule concerns when his motion did not address temporary parenting time, and refusing to advise respondent's counsel on an acceptable mediator. The district court ordered appellant to pay $500 in conduct-based attorney fees.

The district court held a trial on maintenance and custody issues. A custody evaluator recommended that the parties share joint legal and physical custody of the minor children. She opined that, because of the parties' inability to make joint decisions, if there were disputed medical issues, the party providing medical insurance should make

the final decision, and if a problem arose about academic decisionmaking, respondent should decide during the academic year, and appellant would decide during the summer.

Appellant testified that the homestead was in foreclosure; that the parties had filed bankruptcy, with over $100,000 in unsecured credit-card debt; and that they both also had student loan debt. Respondent testified that to pay the bankruptcy filing fees, she had a friend, L.N., act as guarantor, with the understanding that appellant would pay back his half of the fees, but that appellant had not paid his portion. Appellant also challenged respondent's claimed monthly budget as higher than the marital standard of living and alleged that her list of monthly expenses was not supported by receipts.

Appellant testified that he earned about $5,000 in 2011 and that respondent was primarily supporting the children. He testified that he graduated from college in 2008 with a degree in philosophy and a minor in information media and planned to become a public school librarian, but was unable obtain work in that field. He then worked part time as a school paraprofessional and preparing taxes, wrote a few articles yearly, and did some painting. He testified that it had "been very very hard to find a job" because he was over 55 and had been a long-term homemaker. He testified that his long-term goal had originally been to "sit down and seriously write philosophy[, not] . . . to make money, [but] to try and offer something of enrichment to the world." He submitted information on jobs he had sought since 2008 and testified that he was now looking at low paying jobs, for which he was being called back. He stated that he cared for the children's medical needs and, before he had health issues, performed major remodeling on the homestead and car repairs.

Respondent testified that she currently worked .84 time and that her working hours had varied from .64-.96 full-time equivalent (FTE). She testified that, since beginning work at the Albany school district 16 years previously, she had not turned down full time work. She indicated that the parties had not lived extravagantly; that the debt was incurred to support the family; and that she shared the childcare and housework with appellant. Respondent testified that she had asked appellant "to get a job many many many times" and that she had no ability to pay him maintenance without borrowing money to feed the children.

Appellant argued that respondent had intentionally reduced her total income since the parties' separation by declining to continue her previous additional work in school musicals and giving private music lessons. Respondent testified that she had never made $63,000 gross income, as alleged by appellant, and that her most recent tax return showed income of $54,240. Respondent testified that she did not take on additional work during the last two years because it involved too much time for the financial benefit provided, including significant after-school driving.

In the dissolution judgment, the district court granted the parties joint physical custody of the minor children, with sole legal custody to respondent. The district court found that, because the parties were unable to work together on major parenting decisions, joint legal custody was not in the children's best interests. The district court found that respondent had total gross yearly income of $54,240, based on her employment with the Albany school district, with reasonable monthly expenses of $3,036. The district court found respondent's claimed monthly grocery budget excessive

4

and reduced her reasonable monthly expenses for groceries from $700 to $500 per month. The district court found that appellant was "voluntarily employed on a less-than-full-time basis," with potential income of $15,080 per year, calculated at 150% of the current minimum wage of $7.25 per hour, with reasonable monthly expenses of $1,864.

Based on the maintenance factors in Minn. Stat. § 518.552 (2012), the district court found that both parties were unable to meet their reasonable monthly needs and that respondent was unable to contribute to appellant's needs because she could not even meet her own reasonable monthly expenses. The district court therefore denied appellant's request for maintenance. The district court also ordered appellant to reimburse respondent for his portion of the debt owed to L.N. and ordered that the attorney-fee award from June 2011 would not merge into the judgment, but remain outstanding.

Appellant moved to reopen the judgment or, in the alternative, for amended findings or a new trial. The district court issued amended findings, incorporating additional findings that respondent was not voluntarily underemployed, no basis existed to assign potential income to her, and appellant had failed to rebut the presumption that he could be gainfully employed on a full-time basis. This appeal follows.

### D E C I S I O N

### I

Appellant argues that the district court abused its discretion by declining to grant him maintenance. The district court has broad discretion when determining spousal maintenance. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn. 1982). "A district court abuses its discretion regarding maintenance if its findings of fact are clearly

5

erroneous." *Kampf v. Kampf*, 732 N.W.2d 630, 633 (Minn. App. 2007), *review denied* (Minn. Aug. 21, 2007). "Findings of fact are clearly erroneous when they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* (quotation omitted). The reviewing court views the record in the light most favorable to the district court's findings and defers to the district court's credibility determinations. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000).

The district court may grant spousal maintenance if it finds, among other things, that the spouse seeking maintenance lacks the property to provide for that party's own reasonable needs or is unable to obtain adequate support through employment. Minn. Stat. § 518.552, subd. 1. If maintenance is granted, the court must consider all relevant factors including the financial resources of the party seeking maintenance, the likelihood of that party becoming self-supporting, the standard of living during the marriage, the duration of the marriage, the length of absence from employment, opportunities lost by the party seeking maintenance, the age and the physical and emotional condition of that party, and the contribution of each party to the marital property. *Id.*, subd. 2 (2012). The district court weighs these factors under the particular circumstances of the case to determine whether spousal maintenance is needed, and if so, the amount and duration of the award. *Kampf*, 732 N.W.2d at 633–34. "The issue is, in essence, a balancing of the recipient's need against the obligor's ability to pay." *Prahl v. Prahl*, 627 N.W.2d 698, 702 (Minn. App. 2001).

*Appellant's income*

In considering appellant's motion for amended findings, the district court found that he was voluntarily employed on a less-than-full-time basis. The district court therefore imputed to him the amount of income that he could earn working full time at 150% of the minimum wage of $7.25 per hour; the district court computed this amount as $1,885 gross income per month. *See* Minn. Stat. § 518A.32 (2012) (providing methods of calculating potential income when a party is voluntarily unemployed or underemployed); *see also Welsh v. Welsh*, 775 N.W.2d 364, 370 (Minn. App. 2009) (stating that whether a party is voluntarily unemployed or underemployed for purposes of child support presents a question of fact, which this court reviews for clear error).

Appellant argues that he should not be considered voluntarily underemployed because he has been a full-time caregiver for the parties' children, did not decrease his income in bad faith, and has worked increased hours since the separation. But in addressing appellant's motion for amended findings, the district court noted evidence that the parties have recently shared caretaking duties, that appellant is a college graduate with a good academic record and needs no further training, and that he only recently extended his job search to lower-paying jobs. Based on this record, the district court did not clearly err by determining that appellant was voluntarily underemployed and did not err by imputing potential income to him under Minn. Stat. § 518A.32.

*Respondent's income and expenses*

Appellant maintains that the district court clearly erred by declining to find that respondent was voluntarily underemployed and unjustifiably self-limited her income. He

argues that she had a gross income of $63,000 before the parties separated in 2010, that she was working only part time for the Albany school district, and that she recently cut back on her additional work of teaching private lessons and directing extracurricular activities. But the record shows that in 2010, the parties reported joint federal taxable income of $48,955. And the district court did not err by considering respondent's regular, nine-month school-year employment as appropriate employment in determining her ability to meet her needs while meeting those of the party seeking maintenance under Minn. Stat. § 518.552, subd. 2(g). The district court found that, since 2006-2007, respondent's teaching contracts varied between .63 FTE and .84 FTE, and that she never turned down full-time employment. Although the evidence shows that in one previous year, her contract was for .89 FTE, the district court's general finding on the range of her FTE is not clearly erroneous. Further, respondent's testimony reflects that, generally, in years in which she directed a play, she had an FTE on the lower end of that range, so that any extra work would only increase her income to the upper end of that range. "That the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Vangsness*, 607 N.W.2d at 474. Finally, imputing income to a maintenance obligor requires a determination that the obligor was acting in bad faith or unjustifiably limiting income. *Melius v. Melius*, 765 N.W.2d 411, 415 (Minn. App. 2009). The district court was entitled to credit respondent's testimony that her previous schedule of additional part-time work required long hours and made it difficult to spend time with her children. *See Vangsness*, 607 N.W.2d at 472 (stating that an appellate court defers to the district court's credibility determinations). The district

8

court did not clearly err by finding that respondent did not unjustifiably self-limit her income.

Appellant also argues that the district court clearly erred in its findings of respondent's monthly expenses, maintaining that they were significantly higher than her claimed budget in the 2011 bankruptcy proceedings, above the marital standard of living, and, if used to set maintenance, would produce an inequitable result. The district court reduced respondent's claimed grocery budget by $200 per month, but otherwise adopted her proposed monthly expenses as reasonable. The district court, which also reduced appellant's claimed expenses, did not err by declining to base its findings of respondent's expenses for maintenance purposes on the expenses she claimed for bankruptcy purposes over a year before trial. And the marital standard of living is only one factor that informs the district court's decision on spousal maintenance. *See* Minn. Stat. § 518.552, subd. 2 (requiring consideration of "all relevant factors" and providing list of necessary considerations). The district court's allowance of respondent's claimed budget does not mean that it did not consider all of the statutory factors in declining to grant maintenance to appellant.

Appellant argues that the district court abused its discretion by failing to allow him additional time for discovery to rebut respondent's claimed expenses. At trial, he indicated that he had not been furnished with receipts for groceries or from respondent's family trips; respondent's attorney stated that she had furnished all of the information that respondent possessed. Appellant acknowledged that he did not move to compel

9

additional discovery, and the district court did not abuse its discretion by failing to order it. *See* Minn. R. Civ. P. 37.01 (governing motion to compel discovery).

*Permanent maintenance and reservation of maintenance*

Appellant maintains that, because there is no evidence that he will become self-supporting in the future, an award of permanent maintenance is proper. *See* Minn. Stat. § 518.552, subd. 3 (stating that when there is uncertainty as to the necessity of a permanent award, the court "shall" award permanent maintenance and leave the order open for later modification). But a prerequisite for ordering permanent maintenance is a showing that some maintenance is appropriate. Here, the district court thoroughly considered the statutory factors and determined that no maintenance was warranted. The district court found that both parties were unable to meet their reasonable monthly needs, and that "[respondent] simply has *no ability* to meet any of [appellant's] needs because [she] cannot even meet her own reasonable monthly expenses." This finding is not clearly erroneous. The district court did not abuse its discretion by declining to order either maintenance for a limited period or permanent maintenance.

Appellant argues in the alternative that the district court abused its discretion by failing to reserve jurisdiction over the issue of maintenance. When the district court neither awards maintenance nor retains jurisdiction to award it in the future, the district court loses authority to do so after dissolution. *Tomscak v. Tomscak*, 352 N.W.2d 464, 466 (Minn. App. 1984), *superseded on other grounds by* Minn. Stat. § 518.145 (2012). A district court "may reserve jurisdiction of the issue of maintenance for determination at a later date," Minn. Stat. § 518A.27, subd. 1 (2012), but it is not generally required to do

10

so.  Although the record shows that appellant has health conditions that limit his ability to perform physical labor, the district court found that there was no evidence that those conditions may prevent him from future full-time employment.  Appellant has not challenged this finding, and we reject his speculative argument that respondent will be better able to afford maintenance at a later date because her finances will improve with an impending move and remarriage.

## II

Appellant challenges the district court's finding that allocated him the remaining $600 debt owed when L.N., a third party, lent the parties money for the bankruptcy filing. The district court found that the indebtedness was co-signed by L.N.; that respondent paid for her half, but L.N. was forced to pay appellant's portion; and that L.N. sought recovery of the remaining amount from appellant.  "Debts, like assets, are apportionable" in a dissolution matter.  *Chamberlain v. Chamberlain*, 615 N.W.2d 405, 414 (Minn. App. 2000), *review denied* (Minn. Oct. 25, 2000).  Apportionment of marital debt is within the district court's discretion.  *O'Donnell v. O'Donnell*, 412 N.W.2d 394, 396 (Minn. App. 1987).  Appellant argues that L.N. is not a party to this matter and that his payment of the debt to respondent would not guarantee that L.N. would receive it.  But because it is undisputed that the parties owed a marital debt to L.N., the district court did not err by dividing that debt or abuse its discretion by ordering appellant to reimburse respondent when she paid his half of the debt to L.N.

## III

Appellant challenges the district court's grant of sole legal custody to respondent of the parties' second-youngest child, who will turn 18 in October 2014. We initially note that after this appeal was filed, the district court approved the parties' stipulation as to custody of the parties' youngest child and issued an amended judgment awarding sole legal and physical custody of that child to appellant as of June 1, 2014. The district court considered the matter as a motion for custody modification, based on respondent's impending move to Canada and the child's wish to remain in the United States. Although the filing of an appeal suspends the district court's authority to issue an order that affects its previous judgment, it retains jurisdiction relating to matters "independent of, supplemental to, or collateral to" that judgment. Minn. R. Civ. App. P. 108.01, subd. 1; *see Perry v. Perry*, 749 N.W.2d 399, 403 (Minn. App. 2008) (concluding that the district court had jurisdiction to consider a motion to modify a child-support order while an appeal of that support order was pending, when the more recent order involved new facts, did not require reconsideration of the merits of the appealed-from issue, and implicated the district court's ability to address changing circumstances and protect the children's best interests). Here, the district court's later order, which was issued pursuant to the parties' stipulation, addressed the changing circumstances of respondent's move to Canada and the best interests of the youngest child. It did not affect the custody issue currently on appeal, which relates only to the second-youngest child.

This court reviews custody determinations to determine whether the district court "abused its discretion by making findings unsupported by the evidence or by improperly

applying the law." *In re Custody of N.A.K.*, 649 N.W.2d 166, 174 (Minn. 2002). The controlling principle in a child-custody determination is the best interests of the children. *Schallinger v. Schallinger*, 699 N.W.2d 15, 19 (Minn. App. 2005), *review denied* (Minn. Sept. 28, 2005). In making its determination, the district court must consider all relevant factors, including thirteen statutorily enumerated factors, *see* Minn. Stat. § 518.17, subd. 1(a) (2012), as well as additional factors when the parties seek either joint legal or physical custody, *see* Minn. Stat. § 518.17, subd. 2 (2012). Absent domestic abuse, a rebuttable presumption exists that joint legal custody is in the best interests of a child. *Id.*

When the record demonstrates that the parties "lack the ability to cooperate and communicate, joint legal custody is not appropriate." *Wopata v. Wopata*, 498 N.W.2d 478, 482 (Minn. App. 1993). The district court made findings on the best-interest and joint-custody factors, including that the presumption of joint legal custody had been overcome and that joint legal custody was not in the child's best interests because the parties were unable to work together on decisions such as education and medical care, and it would not be detrimental for respondent to be granted sole legal custody. Based on this record, the district court's custody findings are not clearly erroneous, and the district court did not abuse its discretion by granting sole physical custody of the child to respondent.

Appellant argues that the district court adopted verbatim at least one of respondent's proposed findings, which is disfavored and raises the question of whether the district court independently evaluated the parties' testimony and evidence. *Bliss v. Bliss*, 493 N.W.2d 583, 590 (Minn. App. 1992), *review denied* (Minn. Feb. 12, 1993).

But in denying appellant's motion for a new trial, the district court found that his assertion was "simply incorrect" and that its findings "reflect the [c]ourt's independent analysis of the record evidence." Further, even the verbatim adoption of proposed findings is not necessarily reversible error. *Id.* Appellant has failed to show that the district court did not exercise its independent judgment in considering the issue of custody, and we affirm the district court's grant of sole legal custody of the second-youngest child to respondent.

**IV**

Appellant argues that the district court abused its discretion by reiterating its order for $500 in conduct-based attorney fees relating to the June 2011 hearing. Under Minn. Stat. § 518.14, subd. 1 (2012), the district court may, "in its discretion," award conduct-based attorney fees against a party who unreasonably contributes to the length or expense of a dissolution proceeding. *See id.* (listing requirements for need-based, as well as conduct-based, attorney fees). A decision to award conduct-based attorney fees lies "almost entirely" within the discretion of the district court and will not be reversed absent a clear abuse of that discretion. *Crosby v. Crosby*, 587 N.W.2d 292, 298 (Minn. App. 1998) (quotation omitted), *review denied* (Minn. Feb. 18, 1999). "An award of conduct-based fees . . . may be made regardless of the recipient's need for fees and regardless of the payor's ability to contribute to a fee award." *Geske v. Marcolina*, 624 N.W.2d 813, 818 (Minn. App. 2001).

Appellant maintains that the conduct-based fee award is inappropriate because he gave permission a week before the hearing for the children to go to Canada and because

mediation was not raised as an issue in respondent's motion. But the district court reasonably found that appellant's permission was untimely given, and the record shows that in replying to respondent's motion, appellant addressed the issue of a mediator. The district court made sufficient findings in support of its conduct-based fee award and did not abuse its discretion by ordering the award.

**Affirmed.**