*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0965**

In re the Marriage of:

Dhimble Ali, petitioner,
Appellant,

vs.

Fahria Mohamed,
Respondent.

**Filed May 20, 2024
Affirmed in part, reversed in part, and remanded
Johnson, Judge**

Hennepin County District Court
File No. 27-FA-19-5360

Matthew J. Gilbert, Patrick A. McDonald, Gilbert Alden Barbosa, P.L.L.C., Burnsville, Minnesota (for appellant)

Nahid Abuelhassan, Abuelhassan Law, P.L.L.C., St. Paul, Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Johnson, Judge; and Cleary, Judge.*

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**JOHNSON**, Judge

In this dissolution matter, the district court granted sole legal custody of the parties' minor child to the child's mother and granted the parties joint physical custody. The district court also ordered the child's father to pay child support to the child's mother. We conclude that the district court clearly erred in its finding of the father's potential income and, thus, erred in its calculation of the amount of the father's child-support obligation. We also conclude that the district court must clarify inconsistent orders with respect to a motion for attorney fees. We further conclude that the district court did not err in any of the other rulings that are challenged on appeal. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

**FACTS**

Dhimble Ali and Farhia Mohamed[1] were married in December 2017 in Hawai'i. They lived together in Minnesota after the wedding. Mohamed gave birth to a child in June 2019. Ali petitioned for dissolution of the marriage in August 2019. The case was tried to the district court on ten days in January and May of 2021 and March and May of 2022. The district court filed its judgment and decree in November 2022.

In the decree, the district court granted Mohamed sole legal custody of the parties' child and granted the parties joint physical custody with equal amounts of parenting time.

---

[1]It appears that the case caption in the district court and on appeal contains a misspelling of respondent's first name. In her trial testimony, she stated that her first name is spelled Farhia.

The district court ordered Ali to pay Mohamed basic child support of $699 per month and medical support of $28 per month. The district court denied Mohamed's request for spousal maintenance. In a separate order, the district court awarded Mohamed conduct-based attorney fees. Both parties filed motions for amended findings, which the district court denied. Ali appeals.

## DECISION

### I. Validity of Marriage

Ali first argues that the district court erred by denying his mid-trial motion to dismiss, in which he argued that the parties' marriage is invalid. Although Ali sought dismissal on that ground in the district court, he argues on appeal that, if the marriage is deemed invalid, the dissolution proceeding should be converted to a child-custody proceeding. *Cf*. Minn. Stat. § 518.01 (2022).

In August 2021, between the sixth and seventh days of trial, Ali moved to dismiss the dissolution action (which he had commenced two years earlier) on the ground that the parties' marriage is invalid because they are first cousins. The district court continued the trial and held a hearing on the motion in October 2021. The district court filed an order in January 2022 in which it denied the motion.

Ali argues that the parties' marriage is invalid because it is prohibited in Minnesota and, therefore, is void in Minnesota. For the first part of that argument, Ali relies on the third paragraph of the following statute:

The following civil marriages are prohibited:

>    (1)    a civil marriage entered into before the dissolution of an earlier civil marriage of one of the parties becomes final, as provided in section 518.145 or by the law of the jurisdiction where the dissolution was granted;

>    (2)    a civil marriage between an ancestor and a descendant, or between siblings, whether the relationship is by the half or the whole blood or by adoption;

>    (3)    *a civil marriage* between an uncle or aunt and a niece or nephew, or *between first cousins*, whether the relationship is by the half or the whole blood, except as to civil marriages permitted by the established customs of aboriginal cultures; and

>    (4)    a civil marriage entered into between persons when both have not attained the full age of 18 years.

Minn. Stat. § 517.03, subd. 1(a) (2022) (emphasis added). For the second part of Ali's first argument, he relies on a statute that provides, "All marriages which are prohibited by section 517.03 shall be absolutely void, without any decree of dissolution or other legal proceedings . . . ." Minn. Stat. § 518.01.

There is no doubt that sections 517.03 and 518.01 apply to marriages occurring in Minnesota. But Ali and Mohamed were not married in Minnesota. They were married in Hawaiʻi. In that state, there is no prohibition on marriages between first cousins. The relevant Hawaiʻi statute provides only that it is unlawful for two persons to marry each other if they are "ancestor and descendant of any degree whatsoever, two siblings of the half as well as to the whole blood, uncle and niece, uncle and nephew, aunt and nephew, or aunt and niece." Haw. Rev. Stat. § 572-1(1) (2022). The plain language of that Hawaiʻi statute does not prohibit marriages between first cousins, and we are unaware of any

4

Hawaiʻi caselaw on the subject. Accordingly, we conclude, for purposes of this opinion, that a marriage between first cousins that occurs in Hawaiʻi is valid in Hawaiʻi.

Under Minnesota law, the validity of a marriage that occurred outside the state usually is determined by the law of the place where it occurred. This general rule appears in both caselaw and statute. Approximately 70 years ago, the supreme court stated: "The validity of a marriage normally is determined by the law of the place where the marriage is contracted. If valid by that law the marriage is valid everywhere unless it violates a strong public policy of the domicile of the parties." *In re Kinkead's Estate*, 57 N.W.2d 628, 631 (Minn. 1953). A quarter century later, the supreme court restated the rule: "Unless contrary to a strong public policy of this state, Minnesota recognizes a marriage of persons domiciled here as valid if it is valid under the law of the state where it was contracted." *Bogen v. Bogen*, 261 N.W.2d 606, 609 (Minn. 1977); *see also Laikola v. Engineered Concrete*, 277 N.W.2d 653, 655-56 (Minn. 1979).

Shortly after the *Bogen* opinion, the legislature enacted a statute that now provides, in relevant part, "Except as provided in section 517.03, subdivision 1, paragraph (b), all marriages contracted . . . outside this state that were valid at the time of the contract or subsequently validated by the laws of the place in which they were contracted or by the domicile of the parties are valid in this state." Minn. Stat. § 517.20 (2022); *see also* 1978 Minn. Laws ch. 772, § 15, at 1067. The statute referenced in section 517.20 provides, "A civil marriage prohibited under [section 517.03,] paragraph (a), clause (4), that is recognized by another state or foreign jurisdiction under common law or statute, is void

5

and against the public policy of this state unless neither party was a resident of this state at the time the marriage was entered into." Minn. Stat. § 517.03, subd. 1(b).

Neither party has cited section 517.20 to this court. Ali focuses his argument on the common-law rule. He acknowledges that the public-policy exception to the common-law rule applies only if both of the parties to the marriage were domiciled in Minnesota when they married. *See Bogen*, 261 N.W.2d at 609; *Kinkead*, 57 N.W.2d at 631. The word "domicile" generally means "[t]he place at which a person has been physically present and that the person regards as home." *Black's Law Dictionary* 614 (11th ed. 2019). Caselaw predating the *Bogen* opinion provides that "divorce jurisdiction depends on domicile," that "domicile" means "the union of residence and intention," and that "residence without intention, or intention without residence, is of no avail." *Davidner v. Davidner*, 232 N.W.2d 5, 7 (Minn. 1975). Consequently, a person may be domiciled in Minnesota only if the person resides in Minnesota. *See id*.

The district court determined that the public-policy exception to the common-law rule does not apply in this case because Mohamed was not a Minnesota resident on the day of the parties' wedding. Ali argues that the district court clearly erred by finding that Mohamed was not a resident of Minnesota on the date of the parties' wedding. Both parties provided relevant testimony on the issue. Mohamed testified that she lived in the United Kingdom immediately before the parties' wedding and traveled to Minnesota in December 2017 on a three-month "holiday visa," which we understand to mean a non-immigrant tourist visa. *See* 8 U.S.C. § 1101(a)(15)(B), (a)(26) (2018). Mohamed also testified that she and Ali went to Hawai'i "a few days" after she arrived in Minnesota, that they

6

"discussed marriage," and that they "got married over there." Similarly, Ali testified that, when Mohamed decided to travel to Minnesota in December 2017, the parties "had an arranged marriage" and "were thinking about getting married" and "were planning a wedding." Ali also testified that Mohamed had visited Minnesota in August 2017. Neither party testified that Mohamed had lived in Minnesota before December 2017. Ali nonetheless contends that Mohamed "came to the United States in 2017 with the intent of marrying [him] and residing in Minnesota." But "intention without residence . . . is of no avail." *Davidner*, 232 N.W.2d at 7. The evidence recited above supports the district court's finding that Mohamed was not a Minnesota resident on the date of the parties' wedding and, thus, was not domiciled in Minnesota on that date. Thus, the public-policy exception to the common-law rule does not apply in this case.

Even if we were to apply the public-policy exception to the common-law rule, we would reach the same result: that the parties' marriage is valid in Minnesota. The legislature has expressly stated that only one type of marriage that is prohibited in Minnesota is invalid in this state even though valid in the state where the marriage occurred: "a civil marriage entered into between persons when both have not attained the full age of 18 years." Minn. Stat. § 517.03, subd. 1(a)(4). The legislature has declared that such a marriage, even though "recognized by another state or foreign jurisdiction under common law or statute, *is void and against the public policy of this state* unless neither party was a resident of this state at the time the marriage was entered into." *Id.*, subd. 1(b) (emphasis added). The statutory provision expressly providing that a marriage prohibited by section 517.03, subdivision 1(a)(4), is contrary to public policy is the same statute that

7

is expressly mentioned in the exception to section 517.20. *See* Minn. Stat. § 517.20 (referencing Minn. Stat. § 517.03, subd. 1(b)).

The interpretive canon of *expressio unius est exclusio alterius* (which means "the expression of one thing is the exclusion of another") "generally raises a presumption that any omissions in a statute are intentional," especially if "a statute is uncommonly detailed and specific." *Chrz v. Mower Cnty.*, 986 N.W.2d 481, 486 (Minn. 2023) (quotations omitted). Applying this interpretive principle, we must presume that, because the legislature has expressly stated that one—and only one—of the four types of prohibited marriages is void as against the public policy of this state, the legislature is presumed to have intended that the three other types of prohibited marriages—including marriages between first cousins—are *not* contrary to the public policy of this state. Accordingly, even if both parties were domiciled in Minnesota on the date of the wedding, the parties' marriage would be recognized as valid in Minnesota.

Thus, the district court did not err by concluding that the parties' marriage is valid in Minnesota.

## II. Custody

Ali next argues that the district court erred by awarding sole legal custody of the parties' child to Mohamed.

A determination of child custody requires a district court to evaluate the best interests of the child. Minn. Stat. § 518.17, subd. 1 (2022). In doing so, a district court "must consider and evaluate all relevant factors," including 12 statutory factors. *Id.*, subd. 1(a), 1(a)(1)-(12). When considering the statutory best-interests factors, a district

court "must make detailed findings on each of the factors . . . based on the evidence presented and explain how each factor led to its conclusions and to the determination of custody and parenting time." *Id.*, subd. 1(b)(1). This court applies a clear-error standard of review to a district court's findings on factual issues relevant to a custody decision and an abuse-of-discretion standard of review to the district court's ultimate custody decision. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985); *Schallinger v. Schallinger*, 699 N.W.2d 15, 19 (Minn. App. 2005), *rev. denied* (Minn. Sept. 28, 2005). A district court has broad discretion in making custody decisions, and there is "scant if any room" for this court to question a district court's balancing of best-interests factors. *Vangsness v. Vangsness*, 607 N.W.2d 468, 476-77 (Minn. App. 2000).

In this case, the district court made four pages of findings concerning the 12 statutory factors. The district court then summarized its decision with respect to legal custody as follows:

> The Court finds that it is in [the child's] best interest to grant Mother sole legal custody of [the child]. The relevant factors above all weigh in favor of this determination. While the Court finds that it is important that Father be involved in [the child's] life, that is first and foremost a parenting time issue. It would be better for [the child] to have both parents able to make decisions for him, but they are not able to do so. Most of the current friction is caused by Father. Also, Father abused Mother in the past, creating a rebuttable presumption that joint custody is not in the Minor Child's best interests. The Court finds that Father is the reason joint legal custody is untenable. Further, Mother has taken care of those issues until now. Therefore, the Court grants Mother sole legal custody of [the child].

9

Ali contends that the district court erred in several ways. First, Ali contends that the district court did not make sufficiently detailed findings. The district court expressly addressed each of the 12 factors and made findings with respect to each. The district court's findings on the best-interests are sufficiently detailed. *See Kremer v. Kremer*, 827 N.W.2d 454, 458 (Minn. App. 2013) (rejecting similar argument on ground that "district court made particularized findings that encompassed each factor"), *rev. denied* (Minn. Apr. 16, 2013).

Second, Ali contends that the district court clearly erred in its findings concerning domestic abuse, which is the subject of the fourth best-interests factor. *See* Minn. Stat. § 518.17, subd. 1(a)(4). The district court found that domestic abuse occurred in July 2019. Specifically, the district court found that "Father physically harmed Mother, and she had to escape the parties' apartment." The district court's finding is supported by the evidence. Mohamed testified that Ali physically attacked her by throwing her against a wall and headbutting her while she held their infant child. The district court expressly found Mohamed's testimony about the incident to be credible. A neighbor provided corroborating testimony. The district court did not clearly err by finding that domestic abuse occurred between the parties.

Third, Ali contends that the district court improperly relied on the evidence and finding of domestic abuse when deciding to award Mohamed sole legal custody. Ordinarily, a district court applies "a rebuttable presumption that . . . joint legal custody is in the best interests of the child." Minn. Stat. § 518.17, subd. 1(b)(9). But if domestic abuse has occurred between the parties, the district court "shall use a rebuttable

10

presumption that joint legal custody or joint physical custody is not in the best interests of the child." *Id.* In determining whether the presumption has been rebutted, the district court "shall consider the nature and context of the domestic abuse and the implications of the domestic abuse for parenting and for the child's safety, well-being, and developmental needs." *Id.*; *see also Thornton v. Bosquez*, 933 N.W.2d 781, 793 (Minn. 2019).

Ali asserts that the district court erred by applying the presumption against joint custody because there was only a single incident of domestic abuse with only minor physical injury. But the district court made an award of sole legal custody to Mohamed primarily for other reasons: because the parties could not jointly make decisions and because Ali was the primary cause of the friction between them. Domestic abuse was a secondary reason. The district court did not abuse its discretion by the manner in which it considered domestic abuse when awarding sole legal custody to Mohamed.

Fourth, Ali contends that the district court erred by not explaining why it made an award of legal custody that is inconsistent with the recommendation of the neutral custody evaluator. A district court is free to make a different custody decision than what is recommended by a neutral custody evaluator but, in that event, is required to "either (a) express its reasons for rejecting the custody recommendation, or (b) provide detailed findings that examine the same factors the custody study raised." *Rogge v. Rogge*, 509 N.W.2d 163, 166 (Minn. App. 1993), *rev. denied* (Minn. Jan. 28, 1994). In this case, the district court made detailed findings that analyzed the same best-interests factors that the neutral custody evaluator analyzed. The district court expressly referred to the custody evaluator's determination that Ali's parenting skills are "excellent." In its order denying

11

the parties' cross-motions for amended findings, the district court stated that it "considered the custody evaluator's report in its order and gave it appropriate weight."

Thus, the district court did not err by awarding sole legal custody of the child to Mohamed.

### III.  Child Support

Ali also argues that the district court erred in its award of child support.  Specifically, Ali argues that the district court erred by imputing to him potential income of $20,000 per month and using that amount to calculate his child-support obligation.

To determine the existence and amount of a basic child-support obligation, a district court must determine the gross income of each parent.  Minn. Stat. §§ 518A.29, .34(b)(1) (2022).  Gross income includes income derived from the operation of a business.  Minn. Stat. § 518A.29(a).  "If a parent is voluntarily unemployed, underemployed, or employed on a less than full-time basis, or there is no direct evidence of any income, child support must be calculated based on a determination of potential income."  Minn. Stat. § 518A.32, subd. 1 (2022).  Determination of potential income must be made by one of three methods specified by statute.  *Id.*, subd. 2.  One method is based on "the parent's probable earnings level based on employment potential, recent work history, and occupational qualifications in light of prevailing job opportunities and earnings levels in the community."  *Id.*; *see also Welsh v. Welsh*, 775 N.W.2d 364, 369 (Minn. App. 2009).

At the time of the parties' marriage in 2017, Ali operated a business.  Ali stated in an affidavit that he started a second business in 2019 but closed the first business and began closing the second business later that year.  In June 2020, Ali stated that his average gross

income was approximately $90,000 per year, or approximately $7,500 per month, although he did not specify a time period for which the average was calculated. In 2021, Ali was employed in a job that paid $13 per hour, which, he stated, provided him with a monthly gross income of $2,252.

In the decree, the district court found that, after Ali closed his businesses, his mother "came into ownership of a similar business, though she has no experience working in the field or in running a business." The district court found Ali's testimony concerning the closure of his businesses to be not credible and stated that it is "impossible for the Court to truly gauge Father's income to determine child support." Accordingly, the district court decided to impute potential income to Ali based on the income he had derived from his businesses before he closed them. In finding his potential income, the district court reasoned that, in 2018, the income-tax returns for Ali's businesses showed an annual "income" of "over $1.2 million dollars." The district court then stated, "Therefore, the Court imputes monthly income of $20,000 to Father," which the district court determined was "consistent with Father's probable earnings and his recent job history."

On appeal, Ali does not challenge the district court's decision to impute income to him based on his income from the operation of one or more businesses instead of relying on his wage income in years after he closed the businesses. Rather, Ali contends that the district court clearly erred by finding that his potential income is $20,000 per month.

The analytical framework for finding a parent's income from the operation of a business is prescribed by statute. For purposes of calculating a child-support obligation, "income from . . . operation of a business . . . is defined as gross receipts minus costs of

13

goods sold minus ordinary and necessary business expenses required for self-employment or business operation." Minn. Stat. § 518A.30 (2022). In applying section 518A.30, a district court "must first identify the business's gross receipts, cost of goods sold (if applicable), and ordinary and necessary expenses, and then apply the formula by subtracting the cost of goods sold and ordinary and necessary expenses from the business's gross receipts in order to arrive at the parent's income from self-employment or operation of a business." *Haefele v. Haefele*, 837 N.W.2d 703, 711 (Minn. 2013).

Ali asserts that the district court misread the 2018 income-tax returns. He contends that the evidence shows that, in 2018, one of his businesses had gross receipts of approximately $866,000 and net income (*i.e.*, profit) of $104,791, which is equivalent to $8,733 per month. We are unable to find 2018 income-tax returns among the admitted exhibits that support the district court's $1,200,000 figure; we have found 2019 income-tax returns that reflect total gross receipts of between $1,100,000 and $1,200,000. More importantly, the district court did not properly apply the formula that is codified in section 518A.30 and explained in *Haefele*. The district court apparently identified gross receipts but did not subtract the costs of goods sold and ordinary and necessary expenses. As a result, the district court's finding of potential income of $20,000 per month likely is a significant overstatement of Ali's income from the operation of one or more businesses.

Thus, the district court clearly erred by finding that Ali has potential income of $20,000 per month. Therefore, we reverse and remand for further proceedings. On remand, the district court shall apply the formula codified in section 518A.30 and explained in *Haefele* to the existing evidence concerning Ali's income from the operation of one or

more businesses in 2018 or 2019. The district court then shall recalculate Ali's child-support obligation using its amended finding of his potential income.

## IV. Admissibility of Exhibits

Ali also argues that the district court erred by excluding some of his proffered exhibits. Ali does not identify the challenged exhibits by number, but we construe his brief to refer to exhibits 31, 32, 33, 34, and 35. In connection with this argument, Ali also argues that the district court erred by drawing an adverse inference against him.

Mohamed filed a motion to compel discovery in November 2020. The district court granted the motion in part and ordered Ali to produce documents by January 13, 2021. The district court warned that it would draw an adverse inference if Ali did not comply with its order. The district court also found that Ali had unreasonably contributed to the length and expense of the proceeding and ordered him to pay conduct-based attorney fees to Mohamed in the amount of $1,200. In May 2021, the district court determined that Ali had not timely complied with its discovery order. In July 2022, the district court excluded the exhibits identified above on the ground that Ali had not timely produced the exhibits to Mohamed.

The excluded exhibits are concerned primarily with Ali's hourly wage income in 2020 and 2021. But the district court found that Ali's income after closing his businesses is "impossible" to determine because his testimony concerning the closure of his businesses was not credible. The district court determined that Ali's gross income for child-support purposes must be based on his potential income, which must be based on the income he derived from his businesses in 2018, before they were closed. In light of that method of

15

determining Ali's gross income for purposes of child support, the excluded exhibits are irrelevant.

Thus, we need not determine whether the district court erred by excluding exhibits because, even if the district court erred by doing so, the error would be harmless. *See* Minn. R. Civ. P. 61. In addition, the district court did not draw an adverse inference against Ali for purposes of child support; the district court drew an adverse inference against Ali only with respect to the issue of division of property, which is not at issue on appeal.

### V. Temporary Order for Maintenance

Ali also argues that the district court erred by awarding Mohamed $2,000 per month in temporary spousal maintenance during the pendency of the dissolution action.

A party may request an order for temporary spousal maintenance "pending the final disposition of the proceeding." Minn. Stat. § 518.131, subd. 1, 1(b) (2022). Such an order generally is made "solely on the basis of affidavits and argument of counsel," unless a party requests an evidentiary hearing. *Id.*, subd. 8. A district court's ruling on a request for temporary maintenance pending final disposition "shall be guided by the factors set forth in . . . section 518.552." *Id.*, subd. 7. The temporary order "[s]hall not prejudice the rights of the parties . . . which are to be adjudicated at subsequent hearings in the proceeding." *Id.*, subd. 9(a).

In March 2020, seven months after Ali had petitioned for dissolution, Mohamed filed a motion for a temporary order for spousal maintenance of $4,000 per month. The appellate record does not include a transcript of a hearing on Mohamed's motion. In September 2020, the district court filed an order requiring Ali to pay Mohamed temporary

16

spousal maintenance of $2,000 per month in addition to child support. Approximately nine months later, the district court entered judgment for Mohamed in the amount of $18,000 because Ali had not paid any temporary maintenance.

Ali contends that the district court erred in ordering temporary maintenance on the ground that the district court did not expressly consider the statutory factors relevant to an award of spousal maintenance. He cites caselaw for the proposition that a district court must make sufficiently particularized findings to demonstrate that the relevant statutory factors were considered. *See Stich v. Stich*, 435 N.W.2d 52, 53 (Minn. 1989); *Kroening v. Kroening*, 390 N.W.2d 851, 854 (Minn. App. 1986). The caselaw he cites concerns awards of spousal maintenance in a judgment and decree. *Stich*, 435 N.W.2d at 53; *Kroening*, 390 N.W.2d at 854. Ali does not cite any caselaw requiring a district court to expressly analyze all statutory factors when making an order for temporary spousal maintenance pending final disposition. We are unaware of any such caselaw. The statutory provision stating that a district court "shall be guided by" the statutory factors indicates that the statutory factors governing final awards do not apply with full force to orders for temporary maintenance pending final disposition. *See* Minn. Stat. § 518.131, subd. 7.

Thus, the district court did not err in its order for temporary spousal maintenance pending final disposition.

## VI. Attorney Fees

Ali last argues that the district court erred by awarding Mohamed $5,000 in conduct-based attorney fees.

17

In its January 2022 order denying Ali's motion to dismiss, the district court stated, "The Court finds that Mother shall be awarded conduct-based attorney's fees in the amount of $5,000." In March 2022, the district court entered judgment for Mohamed in the amount of $5,000. In the decree, which was filed in November 2022, the district court stated that Ali unreasonably contributed to the length or expense of the proceeding "only as to the motions to compel," for which the district court previously had awarded Mohamed $1,200. In his post-trial motion for amended findings, Ali requested that the district court vacate the $5,000 judgment, consistent with the decree. The district court denied that part of Ali's motion by reiterating its earlier finding that Ali had unreasonably contributed to the length and expense of the proceeding, without differentiating between his conduct relating to the motion to dismiss and his conduct in responding to Mohamed's discovery requests.

The district court filed inconsistent orders concerning Mohamed's motion for conduct-based attorney fees related to Ali's motion to dismiss. Therefore, we remand the matter to the district court for clarification of its ruling on that motion.

**Affirmed in part, reversed in part, and remanded.**